JOHN SUMMERS *v.* STATE OF INDIANA.

[No. 372A147. Filed August 9, 1972. Rehearing denied September 14, 1972.]

*Frederick F. McClellan,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendant-appellant (Summers) was charged by affidavit with Second Degree Burglary. After a jury trial he was found guilty of Entering to Commit a Felony and sentenced to the Indiana State Prison for not less than one nor more than five years.

Summers filed a Motion to Correct Errors contending: (1) That there was insufficient evidence to prove ownership of the building involved; (2) That the court erred in permitting the testimony of a witness regarding events prior to the date of the alleged offense and (3) That there was a fatal variance in the testimony concerning the serial number of one of the television sets alleged to have been taken in the burglary.

The evidence most favorable to the State showed that Summers, together with one Daryle Thornburg and others, met on the day of the offense, December 12, 1969, at a tavern in Muncie, Indiana. They agreed they were going to "break in a place and try to get some money." They then proceeded to Lynn, Indiana in Summers' truck and stopped at an appliance store described by State's witness, Morris, as belonging to him. Thornburg punched out a window glass at the front of the store with his elbow and Summers and the others removed several television sets from the store and carried them to the truck which had been parked around the corner. The TV sets and other stolen items were then transported to a farm in the vicinity of Modoc. Summers assisted the others in unloading the stolen items and all returned to their homes in Muncie. Plans were made at a meeting the next day to sell one of the stolen sets and Summers, Thornburg and another man went back to the farm, picked up a TV set which they took to Jonesboro where they sold it to Mrs. Robert Boothey

for $225.00. Defendant received $50.00 from the proceeds of the sale.

Appellant first contends that the jury's verdict is contrary to law in that the State did not introduce sufficient evidence to show that the building in question was owned by one Eddie Morris, as charged in the affidavit. Morris took the stand and the following appears in the record:

"Q. And who is the owner of that building?

Mr. McClellan: Just a minute, your Honor, we object to that for the record would be the best evidence.

The Court: Objection overruled by the Court.

Mr. McClellan: Thank you, your Honor.

Prosecutor: Would you repeat your answer, please?

Witness: I own the building.

Q. And, as the owner of that building, who was the occupant of it on December the 12th, 1969?

A. I was."

In addition Morris testified that he owned the merchandise in the building as a part of his furniture and appliance store.

Our courts have previously held that proof of ownership is not absolutely required in a burglary prosecution and as was said in *Bradley* v. *State* (1964), 244 Ind. 630, 195 N. E. 2d 347:

"The crime of burglary is in reality an offense against the possession of property and not necessarily against the ownership thereof. As stated in 12 C. J. S. Burglary § 26, p. 685:

'. . . The specific ownership of a building involved . . . is not an essential element of the offense, and title, as far as the law of burglary is concerned, follows the possession, *and possession constitutes sufficient ownership as against the burglar. For the purposes of the offense the occupant of the premises is the owner,* so that the lessor of a house may be guilty of burglary in breaking and entering the house while it is occupied by the lessee.' (Emphasis added.)

It will be noted that the statute defining second degree burglary states nothing specifically as to ownership, it being merely provided:

'(b) Whoever breaks or enters into . . . any building or structure other than a dwelling-house or place of human habitation, with the intent to commit a felony . . .,' etc. Burns' § 10-701 (1956 Repl.), Acts 1941, ch. 148, § 4, p. 447." See also *Jay* v. *State* (1965), 246 Ind. 534, 206 N. E. 2d 128 and *Musick* v. *State* (1972), 258 Ind. 295, 280 N. E. 2d 602.

Appellant's first contention is not well taken, there being ample evidence to support the verdict of the jury, both in fact and in law.

Appellant next contends that there was error in permitting Mrs. Boothey to testify to events prior to December 12, 1969, the date of the offense. The record is as follows:

"Q. And did you have an occasion in December of 1969, to buy a color television set?

A. Yes, sir.

Q. Would you tell the Jury under what circumstances you bought that color television set?

Mr. McClellan: Your Honor, I think before we proceed any further, the time should be established when in December —

Q. You recall the approximate date in December when you bought the color television set?

A. No, sir.

Q. Alright. Now, you had had a fire, isn't this correct?

A. Yes, sir.

Q. When was the fire?

A. Just before school started that year.

Q. Pardon me?

A. Just before school started.

Q. And you don't recall when in December you bought the television set, is that correct?

A. No, I don't sir.

Q. O.K. Can you tell the Court and Jury from whom you bought the color television set from?

Mr. McClellan: If it please the Court, I have the same objection until it is established that this occurred after December the 12th, 1969, the date of this alleged offense.

Prosecutor: Again, your Honor —

Mr. McClellan: It won't be relevant.

Prosecutor: (continuing) we will tie it up by our next witness.

The Court: How do you know this was December instead of November, or January, or June or July.

Witness: It was supposed to be our Christmas present.

The Court: How do you know it was 1969, instead of 1968, or '70?

Witness: Because it was the year we had our fire.

The Court: So you know it was December, and you know it was 1969?

Witness: I believe it was in December.

The Court: Alright. Now, the Court will overrule the objection, proceed with your direct examination."

Summers' contention that the Court permitted the witness to testify to events prior to the offense is not well taken.

Mrs. Boothey's testimony was obviously offered to corroborate the evidence of Thornburg and was both relevant and material.

The Court has broad discretion in this area and did not abuse it in this instance. What Mrs. Boothey was apparently saying was that she could not remember the exact date in December, 1969, when she purchased the TV set. The evidence was admissible and it was for the jury to determine its weight and credibility.

Finally, Summers contends that a variance between the testimony of Morris and that of State Police Officer Fisher is

fatal. Morris, the owner, testified that one of the color sets taken was Model No. 3L3145 and he "believed" it had Serial No. 478451. State Police Officer Fisher testified that after information was given him by Thornburg he was able to recover a TV set from the Shirley Franklin residence in Muncie, bearing Serial No. A 478154 and the same Model No. 3L3145. This variance is immaterial in view of other testimony. Franklin testified that he received a TV set from Thornburg and that they, in company with defendant Summers, went to a barn, picked up the set and sold it to Mrs. Boothey at Jonesboro. Franklin also testified that he later retrieved the same set from Mrs. Boothey. Morris testified that in all, eight TV sets were taken, four of them color, with an average value of about $400.00. He did not mention any brand name in his testimony. Officer Fisher testified, however, that the set he helped recover from Mrs. Boothey was a 23 inch Admiral color set.

Summers argues that there would be no showing that the TV set belonged to Morris "if the court had excluded the testimony of Mrs. Boothey and Shirley Franklin" assuming that the uncorroborated testimony of Thornburg was thoroughly impeached. This position is untenable. The Court properly admitted the testimony of the witnesses Boothey and Franklin and we find no reason to exclude the same from consideration.

Summers argues in conclusion that ". . . the only properly admitted evidence linking the defendant to the crime charged is the testimony of Daryle Duane Thornburg whose testimony is obviously biased and self-seeking, and as such, is insufficient to support the conviction."

As heretofore observed, it is not the function of this court to determine the weight and credibility of the evidence. See,

> *Sanchez* v. *State* (1971), 256 Ind. 140, 267 N. E. 2d 374; and *Rusher* v. *State* (1971), 256 Ind. 520, 270 N. E. 2d 748.

It is only necessary to consider the evidence most favorable

to the State and the logical and reasonable inferences which may be derived therefrom. *Coleman* v. *State* (1971), 257 Ind. 439, 275 N. E. 2d 786; and *Gibson* v. *State* (1971), 257 Ind. 23, 271 N. E. 706.

Finding no error, the judgment of the trial court is affirmed.

Robertson, P.J and Lowdermilk, J., concur.

NOTE.—Reported in 285 N. E. 2d 673.

### ON PETITION—FOR REHEARING

LYBROOK, J.—Appellant's Petition for Rehearing makes just one contention:

"1.   The record in this cause does not show that Summers, Thornburg and another man went back to the farm, picked up a TV set which they took to Jonesboro where they sold it to Mrs. Robert Boothey for $225.00. Mrs. Robert Boothey did not so identify John Summers as one of the men."

The above purports to be a statement of fact and accuses this Court of mis-stating the record in its opinion. We feel compelled to respond to this statement.

The first sentence of the above quoted statement of appellant's counsel is not true. Counsel, not this Court, is in error as to what the record shows.

Witness, Daryle Duane Thornburg, testified in part as follows:

"A.   Well, this one fellow in Muncie, he knowed where he could sell one for us, and I got ahold of him and Johnny and I then went and sold a TV.

Q.   Where did you go to sell the TV?

A.   Jonesboro.

Q.   And what did you get for the TV?

A.   Two hundred and twenty-five dollars.

Q.   What did you do with the two hundred and twenty-five dollars?

A.   Give twenty-five of it to Shirley Franklin and us four split—took fifty dollars a piece.

Q. The money was returned then and split four ways, is that right?

A. Right.

Q. Defendant got fifty dollars of it?

A. Yes."

Witness, Shirley Franklin, testified in part as follows:

"Q. Was John Summers present during the time that you received the television?

A. Yes."

\* \* \*

"Q. Alright. Then what did you do?

A. Well, we went out somewhere to an old barn or —

Q. Now, who is 'we'?

A. Me and Daryl Thornburg and John.

Q. Now, John, you're referring to the defendant, John Summers?

A. Yes, sir.

Q. Is he here in the Court Room today?

A. Yes.

Q. Would you tell the Court where he is seated?

A. What?

Q. Where is John Summers seated?

A. Seated right at the table.

Q. Well, there are three men there, which one?

A. Middle one.

Prosecutor: Alright. I'd like the record to show we have an identification of the defendant.

The Court: Let the record show the defendant is sitting in the middle of the table apparently referred to by the witness.

Q. Alright, you said that 'we' went where?

A. Some old barn, I don't know where it was at.

Q. O.K. What did you do when you got there?

A. We picked up a television.

Q. What kind of television was it?

A. It was a color television, I don't know, it was a wood cabinet.

Q. O.K. And what did you do with the television then?
A. Took it to Jonesboro.
Q. Pardon me?
A. Took it to Jonesboro.
Q. Now, who took it to Jonesboro?
A. I did.
Q. By yourself?
A. No.
Q. Who was with you?
A. Johnnie and Daryl.
Q. Alright. Now, what did you do with the television when you got to Jonesboro?
A. Sold it to a Booth, Miss Booth."

We regret having to laboriously set out the above testimony in detail but feel it necessary in order to state the record correctly.

Appellant's charge being completely unfounded, the Petition for Rehearing is denied.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported in 287 N. E. 2d 260.