JOHN THOMAS KEEL *v.* STATE OF INDIANA.

[No. 3-1273A183. Filed September 3, 1975. Rehearing denied October 24, 1975. Transfer denied December 22, 1975.]

---

4.   IC 1971, 4-22-1-18 (Burns Code Ed.).

*Thomas L. Ryan,* Deputy Public Defender of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

STATON, P.J.—A jury found John Thomas Keel guilty of first degree burglary, and he was sentenced to the Department of Correction for an indeterminate period of not less than ten nor more than twenty years.[1] His appeal to this Court raises the following issues:

---

1. IC 1971, 35-13-4-4, Ind. Ann. Stat. § 10-701(a) (Burns 1956).

(1) Was there sufficient evidence of a place of human habitation?

(2) Did the trial court err when it refused Keel's tendered Instructions Numbers Three and Four, and gave State's Instructions Numbers Two and Nine?

(3) Did the trial court err by allowing an accomplice to testify who had refused to testify earlier at a conditional examination?

(4) Did the trial court err by refusing to admit information from medical records?

We conclude that no errors were committed, and we affirm.

## I.

### Place of Habitation

After scanning the obituary notices in the newspaper, Keel and three co-conspirators planned to burglarize the home of Lula Roberson who had died and was to be buried the next day, December 21, 1971. They reasoned that the house would be vacant, and that if they were caught, they could only be charged with second degree burglary.[2] Before Lula Roberson's death, Burl McClain came to live with her, so that she would have his companionship and protection. He remained in the Roberson home for a week after Lula Roberson's death.

Keel contends McClain's presence in the Roberson home after Lula Roberson's death was an unlawful habitation because McClain's right to habitation of the premises terminated at Lula Roberson's death.

The personal property of Lula Roberson and Burl McClain was taken in the burglary. Burglary is an offense against the possessory interest or possession of the premises. *Musick* v. *State* (1972), 258 Ind. 295, 280 N.E.2d 602; *Sommers* v. *State* (1972), 153 Ind. App. 22, 285 N.E.2d 673; *Bradley* v. *State* (1964), 244 Ind. 630, 195 N.E. 2d 347. Lula Roberson and Burl McClain planned to be married. The Roberson home was McClain's abode at the time of Lula Roberson's death and for a week thereafter. The evi-

2. IC 1971, 35-13-4-4, Ind. Ann. Stat. § 10-701(b) (Burns 1956).

dence clearly establishes that the Roberson home was a place of human habitation at the time of the burglary.

## II.
### Instructions

Keel contends that the trial court erroneously refused his tendered Instructions Three and Four which read as follows:

Instruction Three:
"The essense [sic] of the crime of burglary is an invasion of another's lawful habitation, occupancy or possession of property.
A person who is permitted to occupy quarters in return for a service to be performed by him has no right of possession."

Instruction Four:
"Death terminates a person's right of occupancy where such occupancy has arisen as a result of an agreement for the right of occupancy in return for services."

It is not necessary for the State to prove ownership of the burglarized property or the contractual obligations between Lula Roberson and Burl McClain. Instruction Three is a very confusing, fragmented statement of the law which is only partially supported by the evidence. Instruction Four seeks to resolve a right to occupancy issue which is not an element of the crime of burglary.

We conclude that the trial court did not commit reversible error by refusing Keel's Instructions Three and Four.

Keel further contends that the State's Instruction Number Two, which merely restated the first degree burglary statute, was in direct conflict with his Instruction Number Nine which is as follows:

"When a habitation is vacated, even though temporarily, it ceases to be a place where humans make their abode and so becomes a place other than a 'place of human habitation'; therefore, a breaking and entering of such empty habitation becomes second degree burglary."

State's Instruction Number Two refers to "dwelling house" and "place of human habitation" while Keel's Instruction

Number Nine and the affidavit refer only to "a place of human habitation." Keel contends that the jury could have found the Roberson home not a "place of human habitation" under the affidavit but could have found the Roberson home a "dwelling house" under the statute set out in Instruction Two. The common law term "dwelling house" is a broader term than "place of human habitation" although the terms are sometimes used interchangeably. "Dwelling house" at common law included buildings within the curtilage since it applied primarily to rural communities. [See *Words and Phrases*, "Dwelling House."] This subtle distinction or shaded meaning of "dwelling house" was never brought to the jury's attention nor does the evidence suggest its use.

The affidavit mentioned only "place of human habitation" and did not use the additional term "dwelling house." The purpose of the affidavit is to advise Keel of the particular crime charged so that he can prepare a defense. *Noel* v. *State* (1973), 157 Ind. App. 338, 300 N.E.2d 132. Keel does not contend that he was not adequately informed of the charge. Leaving out the term "dwelling house" in the affidavit does not create a fatal variance. After reading all of the instructions given by the trial court to the jury, we conclude that no confusion was created by State's Instruction Number Two and that Keel's contention is without merit.

The State tendered its Instruction Number Nine which was read to the jury. Instruction Number Nine read as follows:

"Accomplice is a competent witness and a person may be convicted on the uncorroborated testimony of an accomplice."

Accomplices are competent witnesses, IC 1971, 35-1-31-3, Ind. Ann. Stat. § 9-1603 (Burns 1956), and a defendant may be convicted on the uncorroborated testimony of an accomplice. *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Shepherd* v. *State* (1970), 254 Ind. 404, 260 N.E.2d 563; *Woods* v. *State* (1972), 153 Ind. App. 521, 288 N.E.2d 191. The jury

was properly informed of the applicable law. Keel's assertion that Instruction Nine indicates the court's opinion as to the weight and credibility to be given an accomplice's testimony is without merit.

## III.

### Accomplice Testimony

Keel attempted to take the deposition of accomplice Paul Marckel the day before trial. At the deposition examination, Marckel admitted that he planned to testify for the State at trial, but he refused to be deposed. Keel questioned Marckel regarding his reasons for refusing to answer deposition questions as follows:

"Q. . . . Are you refusing to testify on the grounds that what you might say may tend to incriminate you at a subsequent judicial proceeding?

"A. Yes.

"Q. And it is my understanding that you are asserting the Fifth Amendment?

"A. Yes.

"Q. Are you also refusing to testify on the grounds that you are named as an accomplice in this cause of action, as an accessory in this cause of action, and that as such you do not wish to testify at this time?

"A. Yes.

"Q. Are you going to assert that same ground, which is a statutory ground, tomorrow during the trial of this cause, if and when you are called as a State's witness?

"A. I don't know.

"Q. You do not know, or you do not understand the question?

"A. —

"Q. I will rephrase the question . . . .

"A. Like all the questions that may be asked tomorrow, I may refuse to answer some, and I may answer some. So, you know, to say what I will say tomorrow, I don't, you know, I don't you know. . . ."

When the State called Marckel as its witness at trial, Keel immediately requested a protective order barring Marckel's testi-

mony because of his refusal to answer deposition questions. The trial court denied Keel's request. Marckel then consented to testify for the State and admitted his participation in the burglary. On appeal, Keel contends that Marckel's refusal to testify at the deposition examination rendered him irrevocably incompetent to testify at trial and that the trial court erred in denying Keel's request for a protective order.

Marckel was competent to testify at trial. Under IC 1971, 35-1-31-3, Ind. Ann. Stat. § 9-1603 (Burns 1956), accomplices are competent witnesses if they consent to testify at trial. Marckel's assertion of his right against self-incrimination at the deposition examination did not render him incompetent to testify at trial.

The trial court did not abuse its discretion by denying Keel's request for a protective order. Although we have found no Indiana case discussing the applicability of the sanctions to compel civil discovery under Indiana Rules of Procedure, Trial Rule 37 to criminal discovery, Indiana trial courts have been granted broad discretion and flexibility in the area of criminal discovery. *State ex rel. Keller* v. *Criminal Court of Marion County* (1974), 262 Ind. 420, 317 N.E.2d 433; *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N.E.2d 873; *State* v. *Buza* (1975), 163 Ind. App. 514, 324 N.E.2d 824. Under proper circumstances a trial court does have the inherent power to grant a protective order barring testimony. *See State* v. *Buza, supra.* However, in this case, there has been no contention that the State was involved in a deliberate attempt to thwart discovery. Neither in his request for a protective order nor in his argument to the court in support of his request did Keel assert that Marckel was refusing to answer deposition questions in bad faith. It is not clear on the face of Marckel's published deposition, made a part of the record on appeal, whether Marckel was acting in bad faith or was merely uncertain as to whether he would testify at trial. Without a showing of bad faith on the part of the State or the deponent, we can not say that the trial

court abused its discretion in denying the request for a protective order barring Marckel's testimony.

If Keel was surprised by Marckel's decision to testify at trial, just as in the case of a surprise State witness, Keel's remedy was a continuance. See *Hunt* v. *State* (1973), 260 Ind. 375, 296 N.E.2d 116; *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666; *Kelley* v. *State* (1973), 156 Ind. App. 134, 295 N.E.2d 372; *Garcia* v. *State* (1973), 159 Ind. App. 64, 304 N.E.2d 812.

Keel's contention that a continuance would be a useless remedy since the witness could again refuse to answer deposition questions is without merit. If the deponent again refused to answer deposition questions, although he had already consented to testify at trial and waived his privilege against self-incrimination, deponent's bad faith would be apparent and the exclusion of his testimony at trial would be a proper sanction.

## IV.

### Medical Records and Collateral Matters

Dutt, a second accomplice, testified for the State against Keel. He denied that during a jail cell suicide attempt he said to a cellmate that, ". . . he had told several lies about his friends." He further denied that he was suffering from LSD hallucinogenic flashbacks at the time of his attempted suicide. The trial court refused to admit medical record information tendered by Keel who offered to prove that the information would contradict Dutt's testimony that he was not suffering LSD hallucinogenic flashbacks when he made certain statements to his cellmate. Dutt admitted using LSD and having occasional hallucinations.

Proof of Dutt's medical condition at the time of the jail suicide attempt was not relevant proof of the crime at issue nor was it independently provable, apart from the alleged contradiction, to impeach or disqualify Dutt. *Bryant* v. *State* (1973), 261 Ind. 172, 301 N.E.2d 179; McCORMICK, EVIDENCE § 47 (2d ed. 1972). Keel

was attempting to impeach Dutt's testimony by introducing extrinsic evidence contradicting Dutt's testimony on a collateral matter. A witness may not be impeached by evidence contradicting his testimony on collateral matters. *Bryant* v. *State, supra.* The trial court properly excluded the medical record information.

The judgment of the trial court is affirmed.

Garrard, J., and Hoffman, J., concur.

NOTE.—Reported at 333 N.E.2d 328.