

**FILED**

Apr 28 2016, 7:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Cory J. Lightner
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Howell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 28, 2016<br><br>Court of Appeals Case No.<br>35A05-1510-PC-1634<br><br>Appeal from the Huntington<br>Circuit Court<br><br>The Honorable Thomas M. Hakes,<br>Judge<br><br>Trial Court Cause No.<br>35C01-1203-PC-4 |

**Vaidik, Chief Judge.**

# Case Summary

[1] At the time of the crime in this case, burglary was generally a Class C felony but was a Class B felony if the building or structure was a "dwelling." The State charged Joshua Howell with Class B felony burglary for breaking into a house just hours after the sole occupant was found dead inside. We find that it is reasonable to construe "dwelling" to include buildings and structures that have been occupied in the immediate past by a recently deceased resident. This is because even after the sole occupant of a house dies, it is common and expected for people still to be at the house. To find otherwise would reduce the criminality of burglars who target houses where the sole occupant has recently died. Further, the fact that the house was ordered vacated by the county health department just hours before Howell broke in does not impact whether it was a dwelling for purposes of our burglary statute. We therefore affirm.

# Facts and Procedural History

[2] On the afternoon of August 2, 2011, Debra Scheiber went to visit her elderly mother, Sylvia Fry, who lived alone at 511 Sherman Street in Huntington. When Debra arrived, she found her mother dead. Debra called the Huntington Police Department to report her mother's death, and police officers arrived at 3:24 p.m. Because Sylvia's house was filled with trash, *see* Tr. p. 17; Ex. C, D, & E, the police contacted the Huntington County Department of Health ("health department") at 4:03 p.m. Joe Rakoczy from the health department

responded and determined that 511 Sherman Street was "unfit for human habitation." Ex. A. Rakoczy placed an orange sticker on the door that stated:

Public Health Notice

By Order Of: Health Officer or Designee

Due to Unsanitary Conditions, this dwelling is declared "Unfit for Human Habitation" (Pursuant to IC 16-41-20-1 et seq.) and ordered to remain vacated of human occupancy until the defects identified are corrected.

\* \* \* \* \*

DO NOT REMOVE UNDER PENALTY OF LAW

*Id.* Sylvia's body was removed from the house, and the police left at 4:39 p.m. When the police left, Rakoczy was still there speaking with family. Rakoczy also sent a letter to Sylvia's estate that stated, in pertinent part:

> Based upon the existence of unsanitary conditions that are likely to cause sickness among persons who might enter or occupy the dwelling, it is ordered by this department that all occupants of the dwelling be vacated within five (5) days after the date of this notification, or no later than midnight, August 6, 2011.
>
> \* \* \* \* \*
>
> At no time after the posting of the Unfit for Human Habitation Order shall the home be occupied by any person other than for the purpose of fulfilling the remedial requirements of this Order. Corrective action must be completed within forty-five (45) days

after the date of this notification, or no later than midnight, September 16, 2011.

Ex. B.

[3] Later that same day, at 9:58 p.m., the police were called back to 511 Sherman Street on a report of a burglary in progress. Howell entered the house through an unlocked sliding door and took four porcelain dolls. As Howell was walking down the street with the dolls, a neighbor stopped him. A fight ensued, and Howell bit the neighbor. The neighbor restrained Howell until the police arrived. Howell told the police that he had seen the death investigation earlier that day and went inside the house to see what he could take. Ex. 7 (Narrative Report, p. 2).

[4] The State charged Howell with Class B felony burglary (elevated from a Class C felony based on 511 Sherman Street being a "dwelling"), Class A misdemeanor battery (for the incident with the neighbor), and being a habitual offender. Ex. 1. Howell and the State later entered into a plea agreement in which Howell agreed to plead guilty to Class B felony burglary and Class A misdemeanor battery, and the State agreed to dismiss the habitual-offender enhancement. The plea agreement provided that Howell would receive an eighteen-year sentence. Ex. 2. The trial court accepted the plea agreement and sentenced Howell to eighteen years.

[5] In 2012, Howell filed a pro se petition for post-conviction relief, which was amended by counsel in 2015. The petition alleged that Howell's trial counsel

was ineffective and that his guilty plea was not knowing, voluntary, and intelligent. Appellant's App. p. 55. The foundation of both claims was that 511 Sherman Street was not a "dwelling" as defined by Indiana law when Howell broke in.

[6] The post-conviction court entered findings of fact and conclusions of law denying relief because it found that 511 Sherman Street was a dwelling for purposes of our burglary statute. Howell now appeals.

# Discussion and Decision

[7] Howell contends that the post-conviction court erred in denying his petition for post-conviction relief. He argues that his guilty plea was not knowing, voluntary, and intelligent and that his trial counsel was ineffective. Both claims hinge on whether 511 Sherman Street was a dwelling when Howell broke in.

[8] At the time of the crime in this case, burglary was generally a Class C felony but was a Class B felony if "the building or structure is a . . . dwelling." Ind. Code Ann. § 35-43-2-1 (West 2012).[1] Dwelling, in turn, means "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." Ind. Code § 35-31.5-2-107.[2]

---

[1] The burglary statute was amended effective July 1, 2014. Burglary is now generally a Level 5 felony and a Level 4 felony "if the building or structure is a dwelling." Ind. Code Ann. § 35-43-2-1 (West Supp. 2015).

[2] This definition of dwelling was previously located at Indiana Code section 35-41-1-10. It was moved to its current location in 2012. *See* P.L. 114-2012, § 67.

[9] There are numerous Indiana cases addressing whether a building or structure is a dwelling, but none of them address the law-school-exam question presented here. Traditionally, our courts have said that burglary of a dwelling is not so much an offense against property as it is an offense against the sanctity and security of habitation. *Watt v. State*, 446 N.E.2d 644, 645 (Ind. Ct. App. 1983); *see also Ferrell v. State*, 565 N.E.2d 1070, 1072 (Ind. 1991) ("This Court has traditionally held burglary . . . to be an offense against the habitation."). To that end, the legislature has provided an increased penalty for burglarizing a dwelling "because of the potential danger to the probable occupants." *Byers v. State*, 521 N.E.2d 318, 319 (Ind. 1988).

[10] This is not to say that an occupant must be present at the time of the burglary in order for the building or structure to constitute a dwelling.[3] It is well established that if a house is left empty temporarily by its occupant, the house does not lose its status as a dwelling if the occupant intends to return. *See Phillips v. State*, 514 N.E.2d 1073, 1075 (Ind. 1987) (although the occupants "were temporarily out of the[ir] homes on vacation" when the burglaries were committed, this did not "remove the[ir] homes from the definition of dwellings"); *Welch v. State*, 509 N.E.2d 824, 825 (Ind. 1987) (although at the time of the burglary the victim was

---

[3] Before our burglary statute was amended in 1982, it defined first-degree burglary as breaking and entering "a dwelling or other place of human habitation." *Phillips v. State*, 514 N.E.2d 1073, 1075 (Ind. 1987). The old version was interpreted as requiring "a showing [that] the building was a dwelling and that persons were dwelling in it at the time of the break-in." *Id.*; *Tipton v. State*, 981 N.E.2d 103, 108-09 (Ind. Ct. App. 2012), *trans. denied*. The Indiana Supreme Court has held that the current burglary statute does not require "the occupier of the residence to be in the home at the time of the burglary." *Phillips*, 514 N.E.2d at 1075.

temporarily staying with his parents until his new furniture could be delivered to his apartment—and in fact the victim returned to his apartment shortly after the burglary—"the victim's temporary absence did not alter the character of his apartment as a dwelling"); *Hayden v. State*, 19 N.E.3d 831, 837 (Ind. Ct. App. 2014) (although the occupant of the house had been in a nursing home for one year when the burglary was committed and it was unlikely that he would return, the house was still a dwelling because his personal possessions were there, the electricity was on, his mail was delivered there, someone took care of the outside of the house, and he talked about returning), *reh'g denied*, *trans. denied*; *Middleton v. State*, 181 Ind. App. 232, 391 N.E.2d 657, 661 (1979) (although a house was unoccupied for five months while the occupant vacationed in Florida, the house was still a dwelling because the occupant intended to and did, in fact, return); s*ee also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.1(c) (2d ed. 2003) ("If the place is one of human habitation, there is no requirement that a person be present therein at the time of the offense. If the residents are away, be it for a short time or for extended portions of the year, it will still suffice as a dwelling house." (footnotes omitted)); 3 Charles E. Torcia, *Wharton's Criminal Law* § 325 (15th ed. 1995) ("If a person leaves his dwelling house for a particular or indefinite period of time, intending thereafter to return—as where he spends the summer months at the seashore or the winter months in the south—his dwelling house remains a dwelling house even during such absence.").

[11] The common thread to these cases is that an unoccupied house is a dwelling if the occupant intends to return. *See Carrier v. State*, 227 Ind. 726, 89 N.E.2d 74, 76 (1949) ("[A] house[,] although furnished as a dwelling house, loses its character as such for the purposes of burglary if the occupant leaves it without the intention to return."); 3 Torcia, *supra*, § 325 ("If a person leaves his dwelling house, intending never to return, it ceases to be a dwelling house. It does not become a dwelling house again until a new person begins to live in it; he begins to live in it when he starts to use it regularly for the purpose of sleeping." (footnote omitted)).

[12] But death is different than a temporary absence. Although there are no Indiana cases addressing whether a building or structure is a dwelling when the sole occupant is dead,[4] we find that it is reasonable to construe dwelling to include buildings and structures that have been occupied in the immediate past by a recently deceased resident. This rule is consistent with the purpose of our burglary statute, which is to provide an increased penalty for burglarizing a dwelling "because of the potential danger to the probable occupants." *Byers*, 521 N.E.2d at 319. As other states have recognized, even after the sole

---

[4] In *Keel v. State*, 165 Ind. App. 579, 333 N.E.2d 328 (1975), *reh'g denied*, the defendant scanned the obituary notices in the newspaper and planned to burglarize the home of Lula Roberson, who had died and was to be buried the next day. The defendant "reasoned that the house would be vacant, and that if [he was] caught, [he] could only be charged with second degree burglary." *Id.* at 330. However, before Lula's death, Burl McClain came to live with her for "companionship and protection" and remained in Lula's house for one week after her death. *Id.* This Court concluded that because Lula's house was Burl's "abode at the time of [her] death and for a week thereafter," the house "was a place of human habitation at the time of the burglary." *Id.* *Keel* does not address the scenario presented here.

occupant of a house dies, it is common and expected for people still to be at the house. *See, e.g.*, *Cochran v. Commonwealth*, 114 S.W.3d 837, 839 (Ky. 2003) (noting that the time "immediately following a person's death is often hectic and chaotic for the deceased's family, friends and loved ones" and "is a time of gathering"; therefore, the "[u]se of the deceased's home as a place of temporary residence . . . is common and is to be expected"). To find otherwise would reduce the criminality of burglars who target houses where the sole occupant has recently died even though there is still a good chance that people will be there. *See People v. Barney*, 786 N.E.2d 31, 35 (N.Y. 2003) ("We refuse to adopt a rule that a house loses its character as a dwelling immediately upon the death of its sole occupant merely because there is no conclusive evidence that any other person intended to reside there. To do so would reduce the criminality of a burglar who, having knowledge of an occupant's or homeowner's death, would seek to exploit the situation, when the potential harm to persons—such as grieving friends and relatives—would still be present."); *see also Cochran*, 114 S.W.3d at 840 (noting that because it is common to use a deceased's home following death, it "should not be discounted by miscreants who would seek to take advantage of the misfortune of others").

[13] Here, Sylvia, the sole occupant of 511 Sherman Street, was found dead inside her house hours before Howell broke in. In fact, Howell knew that Sylvia had been found dead earlier that day. *See* Appellant's Br. p. 12 ("Howell admitted to observing the death investigation earlier that day."). Accordingly, 511 Sherman Street was a dwelling when Howell broke in.

Further, the fact that the health department determined that 511 Sherman Street was "unfit for human habitation" hours before Howell broke in does not impact whether the house was a dwelling for purposes of our burglary statute.[5] Notably, Howell does not cite any cases where a determination that a house was inhabitable removed it from the definition of dwelling. Courts that have addressed this issue have found the opposite. *See People v. Aguilar*, 181 Cal. App. 4th 966, 970 (Cal. Ct. App. 2010) (concluding that the habitability of a dwelling is viewed through the eyes of the burglary victim, who in this case had been ordered by apartment management to temporarily relocate to a hotel because of fire damage), *rev. denied*; *People v. Salgado*, 10 N.Y.S.3d 67, 68 (N.Y. App. Div. 2015) (noting that although the "apartment" did not comply with code, there was no requirement that in order to be considered a "dwelling" for purposes of burglary, the building had to comply with "certificates of occupancy, building codes and the like," such as a city order to vacate due to fire damage). We acknowledge that in these cases the occupants intended to return. But these cases did not involve a sole occupant's recent death. Given the recency of Sylvia's death and the fact that the health department's orange sticker and letter specifically contemplated that people could enter the trash-

---

[5] Title 16 of the Indiana Code, which applies to health departments, defines "dwelling" as "any part of any building or the building's premises used as a place of residence or habitation or for sleeping by a person." Ind. Code § 16-18-2-104. The definition of "dwelling" contained in Title 35—not Title 16—applies to this criminal case.

filled house to clean it, 511 Sherman Street was a dwelling when Howell broke in.

[15] Because 511 Sherman Street was a dwelling when Howell broke in, his post-conviction claims based upon the house not being a dwelling fail.

[16] Affirmed.

Barnes, J., and Mathias, J., concur.