ATTORNEY FOR APPELLANT ATTORNEYS FOR APPELLEE

Jessie A. Cook Jeffrey A. Modisett

Terre Haute, Indiana Attorney General of Indiana

Andrew L. Hedges

Deputy Attorney General

Indianapolis, Indiana

IN THE

SUPREME COURT OF INDIANA

HERSCHEL SPENCER, )

)

Appellant (Defendant Below), )

)

v. ) Cause No. 84S00-9704-CR-280

)

STATE OF INDIANA, )

)

Appellee (Plaintiff Below). )

APPEAL FROM THE VIGO SUPERIOR COURT

The Honorable Michael H. Eldred, Judge

Cause No. 84D01-9603-CF-0081

January 4, 1999

SHEPARD, Chief Justice.

A jury found appellant Herschel Spencer guilty of murdering Tammy Carlyle.  Spencer was sentenced to sixty-five years in prison.   

Spencer now raises four issues on direct appeal:

I. Whether the trial court erred by permitting the State to introduce evidence of Spencer's prior batteries against Carlyle;

II. Whether the court erred by admitting Carlyle's prior statements regarding her fear of Spencer;

III. Whether the court erred by admitting three autopsy photographs; and

IV. Whether the 
court erred by giving a final instruction about the batteries.

Facts

Spencer and Carlyle had a long-term relationship but never married.  They had two children.  Their relationship was marked by several incidents of violence which included the following reported incidents: (1) Spencer struck Carlyle with a fishing pole which resulted in a police report but no charges; (2) Spencer beat Carlyle with a fiberglass tent pole and burned her chest with a curling iron
 resulting in a battery conviction; and (3) Spencer struck Carlyle and choked her, leaving visible hand prints on Carlyle's neck, resulting in a second battery arrest but no conviction.  

On several occasions, Carlyle spoke of fear that Spencer would harm her, including an incident in which she reported Spencer told her she "needed to be dead," but that "a bullet was too good for" her and that she "just needed to be tortured."  (R. at 1134-35.)  Carlyle also spoke of a second incident in which Spencer threatened to kill her and her sister and "bury them under a board."  (R. at 882.)  Days before Carlyle's body was discovered, the police were called to Carlyle's home because Spencer had tackled her and attempted to choke her, but Carlyle reported to the investigators that she could not report the crime because Spencer had threatened to kill her and bury her under a board.   

Upon a report that Carlyle was missing, the Terre Haute Police commenced a search and discovered her body buried in a shallow wooded area called the Jungle.  Carlyle's body was in an advanced stage of decomposition.  A later autopsy revealed that the cause of Carlyle's death was consistent with manual strangulation.  One witness testified at trial that she observed Spencer in the Jungle, near the spot where Carlyle's body was found, with dirt on his hands, shirt, and pants.  Spencer's neighbor reported that Spencer had asked him for a shovel near the time of Carlyle's murder.  Spencer asked another person to provide him with an alibi for the night Carlyle was murdered.  Finally, Spencer admitted to a cellmate that he had killed Carlyle by means of strangulation and buried her body in a shallow grave in the Jungle.  

I.  Evidence of Prior Batteries

Spencer claims that the trial court erred in allowing the State to introduce evidence of prior batteries against Carlyle.  The trial court allowed the State to introduce evidence from and details of three prior batteries, specifically: (1) Carlyle's report to police that Spencer hit her with a fishing pole; (2) Spencer's battery conviction for beating Carlyle and burning her with a curling iron; and (3) Spencer's arrest for strangling Carlyle. 

Admission of evidence about prior bad acts is restrained by Indiana Rule of Evidence 404(b), which states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Such evidence is also subject to Evidence Rules 401 and 403, which provide that such evidence must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice to the defendant.  

We review admissibility of prior bad acts under the test of 
Hicks v. State
, 690 N.E.2d 215 (Ind. 1997).
(footnote: 1)  The 
Hicks
 test states that "the standard for assessing the admissibility of 404(b) evidence in Indiana is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403."  
Id.
 at 221.   

The State alleges that the prior bad acts were offered to show Spencer's motive and his identity, both of which are proper purposes under Rule 404(b).  We agree.  This Court has held that where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime--"hostility."  
Id
. at 222; 
see also
 
McEwen v. State
, 695 N.E.2d 79 (Ind. 1988). 
 

In this case, the prior batteries are probative of the relationship between Spencer and Carlyle and his hostility toward her because the batteries were committed against her.  The record of batteries shows a pattern of conflict pointing to the motive of hostility, thereby passing the first prong of the 
Hicks
 test. 

Second, the evidence may be excluded if the prejudicial impact outweighs its probative value.  
Hicks
, 690 N.E.2d at 223; Ind.Evidence Rule 403. 
 
Evidence of prior bad acts speaking to the identity of the killer is highly probative, as in this case where the identity of the killer was the main item of contention.  

The probative value of the evidence may lose force, however, if too much time has elapsed between the prior acts and the crime charged.  We have upheld the admission of a prior incident that occurred only three months before the killing because it retained its probative force, but we have also noted that evidence of an assault on a victim that took place more than three years before the charged crime was of "low probative value."  
McEwen
, 695 N.E.2d at 88.  In the case at bar, two of the three incidents admitted happened three years before the murder.  The length of time between the charged crime and those two acts is too long, diminishing the probative value of the evidence.  On the other hand, the remaining report of battery by attempted strangulation occurred only two years prior to the murder and has a higher probative value.
(footnote: 2)

We are inclined to think this evidence should not have been admitted, but cannot say that the trial court abused its discretion.  Moreover, the other evidence presented was sufficiently compelling that admission of this evidence did not deprive Spencer of his substantial rights.  Ind.Trial Rule 61.

II.  Deceased's Statements Regarding Her Fear

Spencer claims that the trial court erred by permitting the State to elicit testimony about statements the victim made to officers investigating the batteries and to other persons regarding her fear of and interactions with him.  Spencer claims that these statements constitute inadmissible hearsay.  Generally, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Evid.R. 801(c), and is not typically admissible, Evid.R. 802.   

The State claims that the police officers' account of what the victim had said to them was not hearsay because it was not offered to show the truth of the matter asserted but instead to show the steps the investigating officer took.
(footnote: 3)  We have held that admission of a victim's statements through the testimony of a police officer was improper when the sole purpose was claimed to be showing the steps in the investigative process.  
Owens v. State
, 659 N.E.2d 466, 476 (Ind. 1996) ("The trial court could have limited [the officer's] testimony to the fact that he took certain steps in response to what [the victim] had told him.").  While the State may offer testimony to show the steps of an investigation, the testimony of the officers should be limited to that specific purpose.  
Id.
  Because the statements made by the police in this case were used only to prove the truth of the matter asserted, they constitute hearsay.

While Spencer's hearsay contentions have merit, whether they warrant reversal is another matter.  In light of his presence near  the victim's burial site, his request to borrow a shovel, his plea for a fabricated alibi, and his admissions to a cellmate, the hearsay error does not warrant a reversal of Spencer's conviction.  T.R. 61.

III.  Three Autopsy Photographs

 The trial court admitted three autopsy photographs over  Spencer's objection.  Exhibits 21 and 22 show Carlyle's body in an advanced stage of decomposition, one from an angle displaying the victim's missing right arm.  Exhibit 23 shows a close up of the victim's interior chest wall displaying the scar caused by the curling iron burn.  Spencer now claims that the prejudicial impact of the photographs outweighs any probative value they may have.  He further contends that the photographs in question should have been excluded as they were not illustrative of any information relevant to the issues in contention.   

Relevant evidence may be excluded only if its probative value is substantially outweighed by the danger of unfair prejudice.  Evid.R. 403.  Photographs, even ones gruesome in nature, are admissible if they act as interpretative aids for the jury and have strong probative value.  
Robinson v. State
, 693 N.E.2d 548 (Ind. 1998).  
Finally, admission and exclusion of evidence is reviewed on appeal only for an abuse of discretion.  
Isaacs v. State
, 659 N.E.2d 1036 (Ind. 1995).  

Spencer argues that Exhibits 21 and 22, photographs of the victim after the body had been partially cleaned and moved from the original gravesite, should have been excluded because the photographs did not depict the victim in her natural state after death.  This fact was apparent at trial and there was little reason to think that the jury was misled about it.  The State responds that the post-mortem avulsion laceration on the victim's face visible in Exhibit 21 supported its theory that the victim was killed in another location and then moved.  This seems a satisfactory basis for the trial court's ruling.  

Less satisfactory is the State's argument for admitting Exhibit 22, a photograph of the victim's body on the autopsy table showing the right arm missing.  The State says this illustrated the condition of the body when it was found.  This does not seem probative of any fact at issue.

Spencer argues that Exhibit 23, which depicts a scar on the victim's chest, was irrelevant because it shows a scar caused by an injury that occurred several years before the victim's death.  The State contends the scar helped the coroner identify the victim.  Spencer counters that identification of the victim was not at issue,
(footnote: 4) and therefore evidence purporting to prove identity is  irrelevant and cumulative.  Still, as the photograph does display a unique marking of the victim, it did aid in identification of the body; 
Exhibit 23 was relevant and probative.  Spencer has not persuaded us that its admission constituted unfair prejudice.  

Collectively, the admission of these three photographs was within the range of discretion available to the trial court.  

IV.  Final Instructions

Spencer claims that the trial court erred in giving its final instruction over his objection because the instruction allowed the jury to consider evidence of previous batteries as evidence of Spencer's propensity to commit murder.  Spencer asked that the jury instructions allow the jury to consider evidence of prior batteries only as evidence of Spencer's state of mind or the nature of the relationship between Spencer and Carlyle.
(footnote: 5)  The court's final instructions allowed the jury to consider evidence of prior batteries as proof of Spencer's idenity as the killer or his motive.
(footnote: 6)   

Spencer again argues that the evidence may not be considered as proof of identity because insufficient similarities exist between the murder and the previous crimes.  He further alleges that because the jury was invited to consider the prior convictions as proof of identity, the instructions misstate the law and constitute reversable error.  

Instructing the jury is largely within the court's discretion and such discretion is abused only when the instructions misstate the law or mislead the jury.  
Nichols v. State
, 591 N.E.2d 134 (Ind. 1992).  As discussed in Section One, both motive and identity are proper purposes for the admission of evidence of other crimes, wrongs, or acts.  The jury was therefore properly instructed.  

Conclusion

We affirm the judgment of the trial court.

Dickson, Sullivan, Selby, and Boehm, JJ., concur.

FOOTNOTES
1: Spencer urges application of the four-part test of 
United States v. Hudson
, 884 F.2d 1016 (7th Cir. 1989), 
cert. denied
, 496 U.S. 939, as our Court of Appeals did in 
Pirnat v. State
, 612 N.E.2d 153 (Ind. Ct. App. 1993).  We decided this issue adverse to Spencer in 
Hicks
, 690 N.E.2d at 221-22.

2: That strangulation also has more probative value because the facts of the crime charged in this case are consistent with strangulation.

3: 
The State also claims that the statements fit into an exception from the general rule excluding hearsay evidence because they are statements of Carlyle's then existing state of mind.  Evid.R. 803(3).  We think that her statements of fear do not fit squarely into that exception, because most of the statements were made hours or days after the beating incidents, and as such were not contemporaneous with Carlyle's mental emotions.  
See
 
Hicks
, 690 N.E.2d at 223.

4: A photograph of Carlyle's rings was previously admitted to prove the identity of the victim.

5: Spencer offered the following instructions: "During the course of this trial, I have allowed the introduction of certain evidence as to prior batteries allegedly committed by the Defendant upon Tammy Carlyle.  If you find that the defendant did commit the acts alleged, you may not consider that evidence as proof of the defendant's propensity to commit the charged crime,"  (R. at 149), and, "During the course of this trial, I have allowed the introduction of certain evidence as to prior batteries allegedly committed by the defendant upon Tammy Carlyle.  If you find that the defendant did commit the alleged acts, you may consider that evidence upon the issue of the defendant's state of mind at the time of the prior batteries as well as upon the issue of the nature of the parties' relationship.  You may 
not
 consider such evidence as proof of the defendant's propensity to commit the charged offense," (R. at 150).

6: The trial court gave the following instruction: "Evidence has been introduced as to batteries allegedly committed by the defendant upon Tammy Carlyle.  If you find that the defendant did commit the alleged acts, this evidence has been received solely on the issue of the defendant's motive or the identity of the perpetrator of the death of Tammy Carlyle.  This evidence should be considered by you only for the limited purpose for which it was received and not as proof of the defendant's propensity to commit the charged crime."  (R. at 168.)