Everett VINSON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 52A04–0001–CR–13.

Court of Appeals of Indiana.

Sept. 28, 2000.

Gary A Cook, Peru, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant Everett Vinson (Vinson) appeals his conviction of theft, a Class D felony, Ind.Code § 35–43–4–2(a), and armed robbery, a Class B felony, Ind. Code § 35–42–5–1(1).

We affirm.

### ISSUES

Vinson raises eight issues on appeal, which we consolidate and restate as follows:

1. Whether the trial court erred when it allowed two investigating police officers to remain at the Prosecutor's table during trial despite a separation of witnesses order.

2. Whether the trial court improperly admitted hearsay evidence.

3. Whether the trial court improperly admitted the entire written statement of an eyewitness.

4. Whether the trial court improperly limited Vinson's cross-examination of State's witness Dennis Jordan (Jordan).

5. Whether the trial court erred by permitting a police officer to testify that the clothes worn by a perpetrator in a videotape were the same as the clothing worn by Vinson when he was arrested.

6. Whether the trial court erred by allowing the State to reopen its case to answer a juror's question propounded to a witness, thereby permitting the Prosecutor

to ask the witness questions with respect to the juror's question.

## FACTS AND PROCEDURAL HISTORY

On May 15, 1999, a man walked into Phillips 66 gas station in Peru, Indiana, pulled out a long knife, and demanded money from the cashier. Chrissy Rushford (Rushford) was the cashier on duty and complied with the man's demand. Sandra Humbert (Humbert), a customer in the store witnessed the robbery. Humbert later testified that she got a good look at the robber and stated that she saw the car the man used to flee the scene. Humbert also told Rushford the license plate of the vehicle. After the robber fled the gas station, Rushford called the police and repeated to them the license plate that Humbert had told her. When the police arrived, both Rushford and Humbert gave descriptions of the robber.

Two days earlier, on May 13, 1999, Jordan reported to the police that Vinson had been in his apartment and had stolen his license plate for use on Vinson's own vehicle.

Thereafter, on May 17, 1999, an attendant at a gas station in Hobart, Indiana, reported that a man had driven away from the station without paying for his gas. The car the attendant described was similar to Vinson's vehicle. Officer Mark Wefler (Wefler) responded to the radio dispatch, and soon spotted a car matching the attendant's description. Officer Wefler ran a check on the license plate and learned that the license plate had been reported stolen. Office Wefler apprehended Vinson and another officer found a long knife under the driver's seat of Vinson's vehicle. Because the license plate number on Vinson's vehicle matched the one that Jordan had reported stolen, and was similar to the number Rushford and Humbert had given the Peru police, the Hobart police detained Vinson until the Peru police arrived.

The Peru police took Vinson into custody. Humbert identified Vinson's car as the one used in the robbery. She also identified Vinson in a photographic lineup, and identified him at trial.

On May 28, 1999, Vinson was charged with theft, a Class D felony, Ind.Code § 35-43-4-2(a), and armed robbery, a Class B felony, Ind.Code § 35-42-5-1(1). At the conclusion of a two-day jury trial, the jury found Vinson guilty as charged. Vinson now appeals.

## DISCUSSION AND DECISION

### I.  *Ind.Evidence Rule 615*

Vinson argues that the trial court committed reversible error when, after ordering the separation of witnesses, he granted the State's request to permit two police officers to remain at the Prosecutor's table during the trial. Specifically, Vinson contends that Evid.R.615 permits only one police officer witness to remain in the courtroom during trial. We disagree.

Prior to the adoption of Indiana Evidence Rule 615, when a motion for separation of witnesses was made, the ruling on the motion was left to the sound discretion of the trial court and each party had a right to have one person in the courtroom to assist counsel. *Bell v. State,* 610 N.E.2d 229, 233 (Ind.1993), *reh'g. denied.* It was also the common law rule that a police officer may remain in the courtroom even though he may be called as a witness. *See Id.* These rules were replaced by Indiana Evidence Rule 615 which provides:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause.

■ The adoption of this Rule altered prior case law. Under our common law evidence regime, the decision to grant a separation of witnesses order was within the sound discretion of the trial court. *See Garland v. State,* 439 N.E.2d 606, 608 (Ind. 1982). But under Rule 615, the trial court is required to grant motions for separation of witnesses orders. *Smiley v. State,* 649 N.E.2d 697, 699 n. 5 (Ind.Ct.App.1995), *trans. denied.* As the second sentence of Rule 615 makes clear, there are certain witnesses whom a court cannot exclude from the trial proceedings. *Fourthman v. State,* 658 N.E.2d 88, 90–91 (Ind.Ct.App. 1995), *trans. denied.* A trial court is now required to grant a party's request for a witness separation order except for certain witnesses identified by the rule as not being subject to exclusion. *Fourthman,* 658 N.E.2d at 90. Whether a witness fits in an exemption under Rule 615 is within the trial court's discretion, but once a witness has been included in an exemption, the court has no discretion to exclude the witness. *Id.* Therefore, if a witness falls within one of the exemptions enumerated under Indiana Evidence Rule 615, that witness shall be allowed to remain in the courtroom. *Id.*

In the present case, we must determine whether both Officer Steve Hoover and Officer Jeff Butts satisfy an exemption under Rule 615. Vinson argues that the second exemption of Rule 615 allows only one officer or employee to remain in the courtroom during trial. We disagree and conclude that both Officer Hoover and Officer Butts fall under the second exemption, which provides that, "an officer or employee of a party that is not a natural person designated as its representative by its attorney" shall not be excluded from the courtroom. Evid.R.615.

■ At trial, the Prosecutor represented to the court that because both officers were involved in the investigation of Vinson's charges, and they both were needed to remain at the counsel table in order to aide in the prosecution of the case. Thus, as police officers assisting in the prosecution of this case, Officer Butts and Officer Hoover both clearly qualify for the second exemption from exclusion as provided in Evid.R.615. *U.S. v. Crabtree,* 979 F.2d 1261, 1270 (7th Cir.1992), *reh'g. denied, cert. denied* (law enforcement officer assisting in prosecution of case fits within exemption provision of Rule 615); *Fourthman,* 658 N.E.2d at 91. This exemption continues the long-standing Indiana tradition of permitting a police officer to remain in the courtroom at counsel's table even though the officer may also be called to testify as a witness. *Id.*

■ In the present case, Vinson contends that he was prejudiced but has failed to show how the presence of Officer Butts and Officer Hoover in the courtroom during trial altered the outcome of the trial. In fact, Officer Hoover did not testify at trial, and Vinson does not point to any prejudice he suffered as a result of Officer Hoover remaining in the courtroom while Officer Butts testified about the investigation and subsequent arrest of Vinson. Thus, because under Evid.R.615 the State had the right to have both Officer Butts and Officer Hoover remain in the courtroom, and because no evidence was presented to establish any prejudice, we conclude that the trial court did not abuse its discretion.

## II. *Hearsay Evidence*

Next, Vinson argues that the trial court improperly allowed police officers to testify about hearsay evidence.

### A. *Particular Course of Action*

Vinson contends that at his trial, Officer Mark Wefler improperly testified that a police radio dispatch advised him that Vinson had left a gas station without paying. Vinson objected to this testimony on hearsay grounds. Nevertheless, Officer Wefler's testimony with respect to the radio dispatch was made in the context of the officer explaining how Vinson came to be a

suspect in the robbery for which he was arrested and convicted.

Officer Wefler was allowed to testify concerning the events that led to his arrest of Vinson on May 17, 1999, two days after the robbery at the gas station. Officer Wefler testified that he received a radio dispatch that a person had left the gas station without paying. Officer Wefler's testimony about the information he received via the radio dispatch was to explain why he was searching for a vehicle bearing the description of the one Vinson was driving. Further, the jury was admonished not to consider the testimony as evidence of the truth of what was in the dispatch, but rather the evidence was admitted "to show why [Officer Wefler] responded to the dispatch.... as a trigger to explain why he took the action that he took." (R. 326–327).

■ We note initially that the decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the trial court's decision on appeal absent an abuse of that discretion. *Maslin v. State,* 718 N.E.2d 1230, 1234 (Ind.Ct.App.1999), *trans. denied.* Furthermore, we observe that hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Spencer v. State,* 703 N.E.2d 1053, 1056 (Ind.1999) (citing Ind.Evidence Rule 801(c)). While hearsay is generally not admissible, it is admissible for the State to offer testimony to show the investigative steps that a police officer took. *Id.* at 1057. Such testimony must be limited to the purpose of describing the course of the investigation. *Id.*

■ In this case, Officer Wefler's testimony regarding the information he received from the radio dispatch was not to prove the truth of the matter asserted but to explain why he did as he did, searched for a vehicle that matched the description of Vinson's vehicle. Thus, the trial court

did not err in allowing Officer Wefler to testify about the information that he had received in a radio dispatch.

### B. *Police Officer Testimony as to License Plate Number*

Vinson's second hearsay contention involves Officer Butts' testimony regarding out of court statements he received as to the license plate number seen on the car used to flee from the armed robbery scene. Specifically, Vinson argues that the trial court improperly admitted hearsay evidence with respect to Officer Butts' testimony about how he discovered the license plate number of the get away vehicle. We disagree.

During trial, over Vinson's repeated hearsay objections, Officer Butts was allowed to testify that Officer Grant, another police officer who had responded to the crime scene, informed him of a license plate number that he obtained during his investigation at the gas station. Further, Officer Butts testified that he had read a case report prepared by Officer Dennis Hahn, and over Vinson's hearsay objection, Officer Butts was allowed to testify that both the case report and Officer Hahn informed him of the number of Jordan's stolen license plate. Officer Butts was also allowed to testify that during his crime scene investigation he discovered a napkin at the gas station with a license plate number written on it. Although Vinson's trial counsel repeatedly objected on hearsay grounds to Officer Butts' testimony with respect to the license plate number, the trial court judge overruled his objections.

As we previously noted, the decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse the trial court's decision on appeal absent an abuse of that discretion. *Maslin,* 718 N.E.2d at 1234. Furthermore, we observe that hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

prove the truth of the matter asserted." *Spencer*, 703 N.E.2d at 1056 (citing Ind.Evidence Rule 801(c)). While hearsay is generally not admissible, it is admissible for the State to offer testimony to show the investigative steps that a police officer took. *Id.* at 1057. Such testimony must be limited to the purpose of describing the course of the investigation. *Id.*

█ In this case, Officer Butts' testimony regarding the information he received regarding the license plate number was to explain why he was searching for a vehicle with this particular license plate number and not to prove the truth of the matter asserted. The license plate number that Vinson had on his vehicle was not an element of the crime of theft or armed robbery and was evidence that Officer Butts had obtained in the process of his investigation of the crime. Further, Officer Butts' testimony was not to prove the truth of whether Vinson's vehicle had the same license plate number as what Officer Butts had been told, but rather, Officer Butts' testimony evinced his particular course of action to eventually arrest Vinson while driving a vehicle with that particular license plate number. In fact, Officer Butts' testimony reveals that Officer Grant told him two different license plate numbers, one of which was written on a napkin at the gas station. However, Jordan's stolen license plate was different from either of these two license plate numbers. Finally, Officer Butts testified that neither the clerk at the gas station nor the eyewitness gave him information of a license plate number. Thus, the trial court did not err in allowing Officer Butts to testify about the information that he received regarding the license plate number because this was evidence of his particular investigation procedure.

## III. *Admission of Entire Written Statement of Eye Witness*

Vinson next argues that the trial court improperly admitted Chrissy Rushford's (Rushford) statement into evidence. Specifically, Vinson contends that the trial court's admission of Rushford's entire written statement to police containing her identification of the perpetrator was inadmissible hearsay. We disagree.

During cross examination, Vinson's trial counsel asked Officer Butts what Rushford had told him during her statement to the Peru Police Department about the physical characteristics of the perpetrator. In fact, at one point the Record reveals that Officer Butts asked Vinson's defense counsel to which page he was referring when asking him a question about Rushford's statement. On redirect examination, the State sought to introduce Rushford's entire written statement that she had given to the police. Vinson's defense counsel objected to the State's request on hearsay grounds, and the trial court overruled the objection. Thus, Vinson's counsel introduced a portion of Rushford's written statement to police.

█ Under the doctrine of completeness, when one party seeks to admit a portion of a document or recorded statement into evidence, the opposing party can place the remainder of the statement into evidence. *Evans v. State*, 643 N.E.2d 877, 881 (Ind.1994), *reh. denied*. This prevents the jury from being misled by statements taken out of context. *Id.* However, the omitted portions are still subject to the normal rules of admissibility. *Id.* Immaterial, irrelevant or prejudicial material must be redacted from the portions of the statement which are admitted. *Id.*

The doctrine of completeness has been incorporated into the new Indiana Evidence Rules as Ind. Evidence Rule 106.[1]

---

1. Ind.Evid.R.106 provides:
   When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it.

Evid.R.106 does not specifically require that the omitted portions must be subject to the normal rules of admissibility. However, the committee commentary which accompanies the rule states that, unlike the Uniform Rule of Evidence 106, Indiana's rule requires such admissibility under the doctrine of completeness. Thus, Evid.R. 106 does not change Indiana's common law with regard to the admissibility of the omitted portions sought to be included.

However, Vinson's counsel did not claim at trial and does not argue on appeal that admission of Rushford's entire written statement contained irrelevant, immaterial, or prejudicial material, therefore, we must refrain from analyzing whether any portion of her entire written statement should have been redacted.

■■■ Vinson's counsel introduced a portion of Rushford's written statement while questioning Officer Butts during cross-examination. Because defense counsel admitted a portion of a document or recorded statement into evidence, the State had the opportunity to place the remainder of Rushford's written statement into evidence. Thus, the trial court properly admitted Rushford's entire written statement into evidence.

## IV. *Adequate Cross Examination*

Vinson argues that the trial court erred by limiting his cross-examination of Jordan regarding a pending charge and outstanding warrant against Jordan at the time of trial. Specifically, Vinson contends that although he was permitted to question Jordan about the pending charge and outstanding warrant outside the presence of the jury, it was error to not allow the jury to be informed of those circumstances. We find that Vinson has waived this argument.

■■■ It is undisputed that at the time of trial, Jordan had two pending charges, possession of cocaine, a Class B felony, and maintaining a common nuisance, a Class D felony. Before Jordan was placed

on the witness stand to testify in the presence of the jury, defense counsel questioned him outside the presence of the jury about his pending charges and arrest warrant. Jordan stated that he had not been served with an arrest warrant and was not aware of any pending charges against him. Thereafter, the following colloquy took place still outside the presence of the jury:

> [Defense Counsel]: Judge, I just wanted Mr. Siders [Prosecutor] to go on the record saying he has no, he is not going to arrest this man or have him arrested. That either he is doing it to secure his testimony or he is not. I am (inaudible) I think the record should be clear that an open warrant exists on this man and I can't impeach with it if he says that it is not a part of anything before the jury.
>
> [Prosecutor]: Even if he were arrested there was not a conviction, therefore he was not ... So it would make a difference....
>
> BY THE COURT: There's not a conviction and it's not a crime of law of moral turpitude listed in that.
>
> [Defense Counsel]: But the fact remains that an outstanding warrant exists...
>
> BY THE COURT: You can ask if there are any deals between the prosecutor and....
>
> [Defense Counsel]: I, I can't even ask if Mr. Siders can tell me....
>
> [Prosecutor]: There are not.
>
> [Defense Counsel]: That's all I want. I wanted that on the record.
>
> BY THE COURT: Alright.

(R. 431–432). Thus, the prosecutor told defense counsel there was no deal, and the court gave defense counsel permission to question Jordan regarding whether there was a deal. Further, there is no written motion or court's ruling in the record with respect to whether defense counsel could question Jordan about his pending charges or arrest warrant. Although Jordan did have an extensive criminal history which defense counsel did in fact question him about in the presence of the jury, defense

counsel failed to question Jordan about whether he had a deal with the Prosecutor or about his pending charges and arrest warrant. Nevertheless, Vinson now argues that it was improper for the trial court to limit his cross-examination of Jordan in the presence of the jury. However, although Jordan's pending charges and arrest warrant were the subject of extended dialogue among the court, the prosecution, and the defense counsel, nothing in the Record demonstrates that the trial court limited Vinson's defense counsel from questioning Jordan about these issues. Therefore, Vinson has not preserved this issue for our review on appeal.

## V. *Police Officer Opinion*

Vinson argues that the trial court erred by permitting Officer Butts to opine that Vinson's clothing was the same as the perpetrator's clothing as he saw in the surveillance videotape. Specifically, Vinson contends that Officer Butts had no superior ability to identify him in the videotape, and there was no evidence that Officer Butts had any advantage to identify him that the jury did not have.

During direct examination of Officer Butts, the Prosecutor asked him, "when you viewed the video of the robbery itself, how did the view of the video as it showed his pants match to the pants that you found the defendant wearing in Hobart, Indiana?" (R. 391). Defense counsel objected because the videotape was in evidence and was in the province of the jury. However, the trial court judge permitted Officer Butts to make the comparison. Officer Butts then testified that he believed them to be the same pants or almost identical. Officer Butts further testified that: the dark long sleeve garment found in Vinson's vehicle matched what the robber was wearing in the video, the white shirt Vinson was wearing matched what the robber was wearing in the video, and the unique blue baseball cap found in the front passenger seat of Vinson's vehicle matched what the robber was wearing in the video. (R. 392). On appeal, the State argues that

under Ind.Evidence Rule 701, Officer Butts' testimony was permissible as opinion testimony by a lay witness.

Evid.R.701 provides as follows:

If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

In *Gibson v. State*, we found that no Indiana case had addressed the issue of allowing lay opinion testimony by a person who is not an eyewitness to the crimes charged concerning the identity of a person who is depicted in a surveillance videotape, therefore because the text of Indiana's Evidence Rule 701 is identical to its federal counterpart, we looked to a Seventh Circuit case for guidance in order to address this issue. 709 N.E.2d 11, 15 (Ind.Ct.App.1999), *trans. denied.* In *Gibson*, we found that:

The Seventh Circuit has interpreted Fed.R.Evid. 701 to permit a witness to offer an opinion on the identity of an individual in a surveillance video or a photograph, as long as there is a basis for finding that the witness has superior ability to identify the defendant than the jury.... The Seventh Circuit stated that the decision about whether to admit testimony under Fed.R.Evid. 701 is left to the sound discretion of the district court, whose decision will not be reversed except upon a showing of an abuse of discretion.

*Id.* (citing *U.S. v. Stormer*, 938 F.2d 759, 761–762 (7th Cir.1991)).

In the present case, Officer Butts testified that he had viewed the surveillance video at least fifteen (15) or twenty (20) times. Therefore, the trial court properly allowed him to testify regarding his opinion of Vinson's identity as the person depicted in the surveillance video be-

cause Officer Butts' extensive viewing of the video was a basis for the trial court to conclude that Officer Butts was more likely to identify Vinson correctly from the video than the jury. The trial court did not abuse its discretion.

## VI. *Interrogation by Juror*

Finally, Vinson argues that the trial court improperly allowed the State to reopen its case to answer a juror's question to a witness. Further, Vinson contends that the trial court improperly allowed the State to ask questions of the witness that were not within the scope of the juror's question. We disagree.

Ind.Evidence Rule 614(d) states:

A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

Therefore, Evid.R.614(d) provides that a juror "may" be permitted to propound a question, and whether to propound a juror's question to the witness rests within the trial court's discretion. Robert Lowell Miller, Jr., Indiana Practice, Vol. 13, § 614.401 at 274 (1995); *Dowdy v. State*, 672 N.E.2d 948, 953 (Ind.Ct. App.1996), *reh'g. denied, trans. denied.*

In the present case, a juror propounded the following question after the State had rested its case: "I heard no testimony as to anyone else being in car [sic] of gas station. To me everyone's description and what I see on tape [sic] points away from Vinson and towards Jordan. I would like to know if Jordan was at station [sic] or in car [sic] during robbery?" (R. 467). Thereafter, the State requested the case to be reopened for the limited purpose to address the juror's question. Although the trial court judge duly noted defense counsel's objection, he granted the State's request to reopen the case in order to address the juror's question. Defense counsel then reiterated his objection that reopening the case would shift the burden and aide the prosecution in clearing up the reasonable doubt in the juror's minds. However, the court affirmed its decision to reopen the case. Nevertheless, defense counsel asked the court that the State be limited to ask the witness whether or not she saw anyone else in the car. The court denied defense counsel's request and stated that the question was more complex than that one issue, and allowed the entire subject of Jordan's presence at the gas station to be asked. Then, the court permitted the prosecution to ask the witness who was in the car, how she could see who was in the car, whether she could identify Vinson as the person in the car, and if anyone else was in the car. Finally, defense counsel was permitted to cross-examine the witness.

Therefore, pursuant to Evid.R.614(d), the trial court properly allowed the juror to propound the question to the witness, and allowed the State to reopen its case, and properly limited the State's questioning of the witness. The trial court did not abuse its discretion.

## CONCLUSION

Based on the foregoing, the trial court properly allowed two investigating police officers to remain at the Prosecutor's table during trial despite a separation of witnesses order, did not improperly admit hearsay evidence, properly admitted the entire written statement of Rushford, and did not improperly limit Vinson's cross-examination of Jordan. Furthermore, the trial court did not err by permitting a police officer to testify that the clothes worn by a perpetrator in a videotape were the same as the clothing worn by Vinson when he was arrested, and properly al-

lowed the State to reopen its case to answer a juror's question propounded to a witness, thereby permitting the Prosecutor to ask the witness questions with respect to the juror's question.

Affirmed.

BAILEY, J., and BARNES, J., concur.