## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2016, 7:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew B. Arnett
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian K. Wynne, *Appellant-Defendant,* | November 30, 2016 |
| v. | Court of Appeals Case No. 41A04-1602-CR-307 |
| | Appeal from the Johnson Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Cynthia S. Emkes, Judge |
| | Trial Court Cause No. 41D02-1411-F4-57 |

**Vaidik, Chief Judge.**

# Case Summary

[1] In a bifurcated trial, a jury found Brian Wynne guilty of burglary as a Level 4 felony and then determined that he is a habitual offender. Wynne now appeals, arguing that the trial court should not have allowed the State to present certain evidence. Finding no error, we affirm.

# Facts and Procedural History

[2] In August 2014, Vickie McWatters' home in Greenwood was badly damaged by a lightning strike. McWatters contacted Servpro to secure the house and remediate the damage. In the meantime, she moved out, first into a hotel for a week and then into a rental property close to her house. However, she left some belongings in the house, including food, and she continued to use the fenced-in backyard to run her dogs. She "[a]bsolutely" planned to move back into the house after the repairs were done. Tr. p. 195.

[3] McWatters was at the house on October 12, 2014—before her insurance company had approved the repair work—and locked all of the doors when she left. Five days later, on October 17, one of McWatters' neighbors saw a white van backed into McWatters' driveway with the back doors open. The neighbor contacted McWatters, who said that she was not aware of anybody being at the house. As McWatters made her way to the house, the neighbor entered the garage through a side door and discovered Wynne, who said he was working on the flooring.

[4] When McWatters arrived, she asked Wynne what he was doing. He said that he was measuring floors. As McWatters started making phone calls, Wynne was "acting very nervous" and "shaking," and McWatters noticed that he had "peed his pants." *Id.* at 204-05. McWatters called Jim Brydges at Servpro, who told her that Servpro had not sent anybody to the house to measure floors. Over the phone, Brydges could hear a man saying, "I need to leave. I gotta go." *Id.* at 171. McWatters asked Brydges to contact police, and when officers arrived at the house, Wynne told them that he had been sent there by a contractor named "Mr. Smyth" to take measurements. *Id.* at 255. Wynne had previously worked for Charles Smyth, an installation manager for a flooring company, but when an officer talked to Smyth using a number provided by Wynne, Smyth said that he had not sent Wynne to the house. A door and its frame on the side of the garage had sustained damage that McWatters had not previously seen and that was consistent with the door being pried open. Inside the house, McWatters found a black trash can that did not belong to her, that she had not previously seen, and that contained items from her pantry. An identical black trash can was found in the back of Wynne's van. Officers placed Wynne under arrest.

[5] The State charged Wynne with burglary of a dwelling as a Level 4 felony. It also sought to have him declared a habitual offender and sentenced accordingly, alleging that he had numerous prior felony convictions. Two months before trial, the State notified Wynne and the court that it intended to introduce—for purposes of proving the burglary charge, not just the habitual-

offender charge—evidence of three burglaries Wynne committed in Johnson County in 2007. The State asserted that those burglaries were highly similar to the conduct charged in this case and that the evidence was therefore relevant and admissible pursuant to Indiana Rule of Evidence 404(b). Over Wynne's objections both before and during trial, the court allowed the State to present the evidence. The jury found Wynne guilty on the burglary charge.

[6] During the subsequent habitual-offender phase, the State sought to introduce documents indicating that, in addition to the convictions relating to the 2007 Johnson County burglaries, Wynne had been convicted of felonies in Marion County in 1990, 2004, 2006, and 2008. The Marion County documents were stamped as follows:

> Indianapolis Metropolitan Police Dept.
> Certified to be a true copy

Ex. 37-40. Wynne objected to the admission of the documents on the ground that the State had failed to "connect" them to him, Tr. p. 549, but he did not challenge the adequacy of the certification of the documents. The court allowed the documents into evidence, and the jury found Wynne to be a habitual offender. The trial court sentenced Wynne to twelve years for the burglary and added twenty years based on the habitual-offender finding, for a total sentence of thirty-two years.

[7] Wynne now appeals.

# Discussion and Decision

[8] Wynne contends that the trial court committed evidentiary errors during both the guilt phase and the habitual-offender phases of trial. He first argues that the court should not have admitted the evidence of the 2007 Johnson County burglaries pursuant to Evidence Rule 404(b) and that we should therefore reverse his burglary conviction.[1] In the alternative, he asserts that even if we affirm his burglary conviction, we should reverse the habitual-offender finding and sentence enhancement on the ground that the trial court erred by admitting the documents relied upon by the State to establish his prior convictions.

## I. Admission of Prior-Bad-Acts Evidence

[9] Evidence Rule 404(b), under which the trial court allowed the State to present evidence of the 2007 Johnson County burglaries, provides that evidence of prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 403 provides, in turn, that evidence, even if relevant, should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

---

[1] Wynne also challenges his burglary conviction on the ground that the State presented insufficient evidence. Because we conclude below that the other evidence against Wynne was strong enough to render harmless any 404(b) error, we need not separately address his sufficiency argument.

jury, undue delay, or needlessly presenting cumulative evidence." Therefore, when the State seeks to use prior-bad-act evidence, the court must (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and, if so, (2) balance the probative value of the evidence against its prejudicial effect. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997)

[10] Typically, we would review a trial court's ruling on the admissibility of evidence under the abuse-of-discretion standard. *Spencer v. State*, 703 N.E.2d 1053, 1057 (Ind. 1999). And here, given the fact that the incident underlying this case occurred more than seven years after Wynne's 2007 burglaries, we have doubts as to whether the trial court should have allowed the State to present evidence of the earlier crimes. *See Hicks*, 690 N.E.2d at 223 (holding that trial court erred by admitting evidence of incident that occurred more than three years earlier); *see also Spencer*, 703 N.E.2d at 1056 (explaining that three years between charged crime and prior acts "is too long, diminishing the probative value of the evidence"). However, we need not resolve the issue because, even if the trial court erred, the other evidence of Wynne's guilt was particularly strong, so any error by the trial court was harmless. *See Spencer*, 703 N.E.2d at 1056; *Hicks*, 690 N.E.2d at 223.

[11] To obtain a conviction for burglary as a Level 4 felony, the State was required to prove beyond a reasonable doubt that Wynne (1) broke and entered (2) the dwelling of another person (3) with intent to commit a felony or theft in it. Ind. Code § 35-43-2-1(1). Regarding the first element, it is undisputed that a locked

side door had been pried open and damaged and that Wynne entered the house. As for the second element, it is undisputed that McWatters was living in the house until August 2014 and that she moved out only because the house was damaged by lightning, and she testified at trial that she "absolutely" intended to return to the house after it was repaired. Therefore, there is no question that the house was still "the dwelling of another person." *See*, *e.g., Howell v. State*, 53 N.E.3d 546, 549 (Ind. Ct. App. 2016) ("It is well established that if a house is left empty temporarily by its occupant, the house does not lose its status as a dwelling if the occupant intends to return."), *trans. denied*.[2] The evidence that Wynne entered the house intending to commit a theft is also solid. There was a trash can containing items from McWatters' pantry sitting in the house—a trash can McWatters had never seen before—and a matching trash can in the back of Wynne's van. Finally, any holes in the State's case were sufficiently filled by other evidence of Wynne's guilt: he shook, acted nervous, and "peed his pants" after being confronted, and the explanation he offered for being in the house— that he had been sent there to do floor work—immediately cratered. In light of all of this evidence, any error in the trial court's 404(b) ruling would not require reversal.

---

[2] McWatters also testified that she eventually decided not to move back into the house and to instead move to Arizona to be close to her elderly parents, but she made clear that she decided this only after the break-in. *See* Tr. p. 212.

## II. Admission of Habitual Offender Evidence

[12] Wynne also argues that even if we affirm his burglary conviction, we should set aside the habitual-offender finding and sentence enhancement. In order to establish that Wynne is a habitual offender, the State was required to prove that he had been "convicted of two (2) prior unrelated felonies[.]" Ind. Code § 35-50-2-8(b). To do so, the State introduced five sets of documents (Exhibits 36-40) that it said prove five prior felony convictions, asserting that they are "true and accurate certified public documents." Tr. p. 546. On appeal, Wynne contends that the documents were not properly certified and that the trial court therefore erred by admitting them into evidence. As noted above, however, when the State moved to admit the documents, Wynne did not object on this ground. To the contrary, his attorney said, "I know they're certified documents." *Id*. at 549. By failing to challenge the adequacy of certification at the trial-court level, Wynne waived the argument for purposes of appeal. *See Treadway v. State*, 924 N.E.2d 621, 631 (Ind. 2010) ("Any ground not raised at trial is not available on appeal.").[3]

[13] Affirmed.

---

[3] Regarding the certification on one of the sets of documents—that relating to the 2007 Johnson County burglaries (Exhibit 36)—Wynne's attorney objected as follows: "I would just point out that it also hasn't been signed by anyone. It's a . . . there's a stamp on it but it hasn't been signed by anyone on 36[.]" Tr. p. 550. Even if we were to say that this was a sufficient certification objection as to Exhibit 36, any error by the trial court in overruling the objection was harmless, since Wynne did not lodge a similar objection to the documents pertaining to the Marion County convictions (Exhibits 37-40). The four Marion County convictions were double the number necessary to establish Wynne's habitual offender status. *See* I.C. § 35-50-2-8(b).

Baker, J., and Najam, J., concur.