James Jordan WATT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–882A273.

Court of Appeals of Indiana,
Second District.

March 28, 1983.

William F. Thoms, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., G. Douglas Seidman, Deputy Atty. Gen., Indianapolis, for appellee.

1. Ind.Code 35–43–2–1.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant James Jordan Watt (Watt) appeals his conviction of burglary, a class B felony,[1] claiming there was insufficient evidence to prove the burglarized premises was a dwelling.

We affirm.

## FACTS

The facts most favorable to the State disclose that on October 28, 1981, the home of Mollie Davis (Mollie) on South Spruce Street in Indianapolis was burglarized. After observing suspicious activity around the house, a neighbor telephoned the Indianapolis police. Upon arrival the police discovered Watt in the house. Several household items were later discovered missing.

At the April 2, 1982 trial, Virginia Cingo (Virginia), daughter of the eighty-eight-year-old Mollie, testified on behalf of the State. Virginia testified that Mollie was presently staying at a convalescent home in Indianapolis. Prior to July of 1981, Mollie had resided at the Spruce Street residence for about fifty-five years. In July, she began residing with Virginia until October, when she moved to the nursing home. In-court testimony about Mollie's health was unclear. When asked about her mother's condition, Virginia responded, "Well, I don't know exactly; I'm not medically inclined but they tell me she's just not bad and she's not good." *Record* at 99. Virginia also responded to a question concerning why Mollie had left the Spruce Street residence:

"She [Mollie] was living with my brother who had a stroke, and I had her at my home for about four months, and I had to be out to the Veterans Hospital so much and in trying to redecorate the house, I put her in a nursing home on very limited time until my brother either got better or I could get the house under control." *Record* at 84–85.

While Mollie was away, Virginia, who had been assigned power of attorney over

Mollie's affairs, worked at Mollie's house almost every day except Saturdays, redecorating and renovating the house. Clothing, furniture, and other possessions that belonged to Mollie were in the house on October 28, the day of the burglary.

## ISSUE

Watt raises one issue on appeal:

Was there sufficient evidence that the burglarized premises was a dwelling within the meaning of Ind.Code 35–43–2–1?

## DECISION

PARTIES' CONTENTIONS—Watt cites several Indiana cases for the proposition that burglarizing a "dwelling" is an offense against the security of habitation. Because Mollie was not living in the Spruce Street house, argues Watt, there was no proof that he burglarized a dwelling within the meaning of the statute.

The State counters with citation to *Middleton v. State,* (1979) Ind.App., 391 N.E.2d 657, for the proposition that temporary absence from a dwelling during a burglary does not vitiate the character of the premises.

CONCLUSION—Mollie's home was a dwelling within the meaning of the statute; therefore, Watt's conviction of a class B felony was proper.

Watt was convicted under IC 35–43–2–1, which provides in pertinent part:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary a Class C felony. However, *the offense is a Class B felony* if it is committed while armed with a deadly weapon or *if the building or structure is a dwelling* . . . ."

Traditionally, it has been said that burglary of a dwelling is not so much an offense against property as it is an offense against the sanctity and security of habitation. *Carrier v. State,* (1949) 227 Ind. 726, 89 N.E.2d 74; *Bousman v. State,* (1975) 167 Ind.App. 386, 338 N.E.2d 723, *trans. denied.*

"The house of everyone is to him as his castle . . . ." Sir Edward Coke. Thus, a stiffer penalty is imposed for burglary of dwelling houses.

But it has also been said that burglary is an offense against the possessory interest in the premises. *Musick v. State,* (1972) 258 Ind. 295, 280 N.E.2d 602; *Keel v. State,* (1975) 165 Ind.App. 579, 333 N.E.2d 328, *trans. denied.* There can be no doubt that Mollie had a possessory interest in the Spruce Street house and her possessions therein. As the poet Edgar Guest said, "It takes a heap o' living in a house t' make it home." Mollie had dwelt there for approximately fifty-five years, and her clothing and furniture remained there. And as guardian over Mollie's affairs, Virginia served as an interim caretaker of the home in Mollie's absence. It is our opinion that Watt's invasion of Mollie's house and her possessory interest therein constituted a burglary of a "dwelling".

In determining what constitutes a "dwelling", the Indiana courts have given that term its plain and usual meaning. *Burgett v. State,* (1974) 161 Ind.App. 157, 314 N.E.2d 799. The operative word defining "dwelling" is a "home"—a settled residence house for a family and their personal possessions. *Smart v. State,* (1963) 244 Ind. 69, 190 N.E.2d 650. Watt is correct in his assertion that a home is traditionally a place in which its family sleeps. *See Carrier, supra.* But Mollie's absence does not make her house any less a home, because when a house is left empty temporarily by its occupants it still remains a "home" to which they will eventually return. *Smart, supra; Middleton, supra;* 12 C.J.S. *Burglary* § 17 (1938). Thus, in *Middleton, supra,* a burglarized residence that was unoccupied for five months while the owner vacationed was a dwelling. Because the owner intended to return, her temporary absence during the burglary "did not vitiate the character of the premises." 391 N.E.2d at 661.

In comparison, we should acknowledge Indiana decisions which have denied "dwelling" status to certain vacant structures. At first blush, the "houses" in *Carrier, su-*

*pra,* and *Smart, supra,* might appear similar to Mollie's home in that no one slept there on the night of the burglaries. However, the fishing camp and summer cottage involved in those cases do not resemble the house in which Mollie has dwelt for fifty-five years. Thus, the *Carrier* and *Smart* decisions are distinguishable on their facts because they involved only seasonally-inhabited retreats as opposed to a primary residence from which the owner is temporarily absent.

There was evidence from which the trier of fact could reasonably have concluded that Mollie intended to return to her home. When reviewing sufficiency of the evidence claims such as the one before us, we refrain from weighing the evidence and judging the credibility of witnesses. *Gross v. State,* (1983) Ind., 444 N.E.2d 296. Because there was substantial evidence of probative value from which the trial court could have concluded that Mollie had not abandoned her house, we can affirm Watt's class B felony conviction. Such probative evidence includes Virginia's testimony that her mother's possessions remained in the house, as well as the evidence that Virginia spent much of her time caring for Mollie's house and possessions while Mollie was in the convalescent home for "a very limited time." *Record* at 85.

Decisions from other jurisdictions which lend support to our conclusion include *Montgomery v. State,* (1973) 128 Ga.App. 116, 195 S.E.2d 784, 785 (holding that "[t]here is no requirement in the law that a house be continuously occupied in order to be a 'dwelling'. It is sufficient that it is occasionally occupied for residential purposes . . .") and *Hobby v. State,* (Tenn.Cr. App.1972) 480 S.W.2d 554 (house which contained owner's possessions, even though owner was hospitalized and a conservator was appointed, was not abandoned and still constituted a "mansion house").

Judgment affirmed.

SHIELDS and STATON (sitting by designation), JJ., concurs.