# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**GLEN E. KOCH II**
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEFFREY Z. HAYDEN, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 55A04-1403-CR-116 |

APPEAL FROM THE MORGAN CIRCUIT COURT
The Honorable Matthew G. Hanson, Judge
Cause No. 55C01-1310-FB-1345

**November 12, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jeffrey Z. Hayden ("Hayden") was convicted after a jury trial of Burglary, as a Class B felony, and was adjudicated to be a Habitual Offender. He now appeals.

We affirm in part, reverse in part, and remand with instructions.

**Issues**

Hayden raises four issues for our review:

I.   Whether there was sufficient evidence to support Hayden's convictions for Burglary and Residential Entry;

II.  Whether the trial court abused its discretion when it declined to adopt Hayden's proposed jury instruction defining the term "dwelling";

III. Whether the trial court abused its discretion when it ruled as inadmissible hearsay certain testimony Hayden proffered; and

IV.  Whether the charging information lacked specificity as to certain alleged facts, such that Hayden could not receive a fair trial.

We raise sua sponte whether certain of the charges for which Hayden was convicted must be vacated under double jeopardy principles.

**Facts and Procedural History**

On October 9, 2013, Hayden and several other individuals were observed by Ross Pierson ("Ross") while they were removing items from a residence held in a life estate by Ronald Pritchard ("Ronald") in Mooresville. Ronald had not actively occupied the residence for about a year because he had been hospitalized and was later placed in a nursing home for treatment. **(Tr. at 294.)** The house had been owned continuously by at least one member of the Pritchard family since 1947. Ronald's nephew, Paul Pritchard ("Paul") continued to

2

maintain the exterior of the home. Electrical service remained in place for the residence. Ronald continued to receive mail at the residence, and one of Ronald's friends would routinely retrieve mail for him.

Ross knew that Hayden did not own or live in the house, and stopped to take photographs. Hayden eventually saw Ross taking photographs, and began to gesture to Ross that he would put back the items he had removed from the home so that Ross would not call police.

By this time, Ross had already contacted his father, Bradley Pierson ("Bradley") who lived on land adjacent to the Pritchard residence. Bradley called 911 while attempting to prevent Hayden and the others from driving away, and Ross continued to take photographs and video.

Hayden and the others drove away from the Pritchard house. Bradley informed police of Hayden's direction of travel. Hayden was eventually blocked off and taken into custody.

On October 10, 2013, the State charged Hayden with Burglary, as a Class B felony, and Theft and Residential Entry, both as Class D felonies.

On October 29, 2013, the State amended the charging information, adding an allegation that Hayden was a Habitual Offender. The charging information was amended twice more before trial, with revisions to the charges to make them more specific as to the location of the alleged offenses and the identity of the alleged victim.

From January 27 to January 29, 2014, a jury trial was conducted. At the conclusion of the trial, the jury found Hayden guilty as charged. Hayden subsequently admitted to being a Habitual Offender.

On February 28, 2014, the trial court entered judgment of conviction against Hayden as to Burglary, and sentenced him to twelve years imprisonment, enhanced by twelve years as a result of his status as a Habitual Offender.

This appeal ensued.

**Discussion and Decision**

<u>Sufficiency of the Evidence as to Burglary and Residential Entry</u>

Hayden first raises for our review the sufficiency of the evidence as to a specific element of his convictions for Burglary and Residential Entry, namely, whether Ronald's house satisfied the statutory definition of a dwelling.

Our standard of review in challenges to the sufficiency of evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. <u>Drane v. State</u>, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. <u>Id.</u> We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." <u>Id.</u> (quoting <u>Jenkins v. State</u>, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." <u>Id.</u> at 147 (quoting <u>Pickens v. State</u>, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

Here, Hayden was charged with both Burglary and Residential Entry. To convict Hayden of Burglary, as charged, the State was required to prove beyond a reasonable doubt that Hayden broke and entered the building or structure of another person, which building or structure was a dwelling, with intent to commit Theft in it. See I.C. § 35-43-2-1(1)(B)(i). To convict Hayden of Residential Entry, as charged, the State was required to prove beyond a reasonable doubt that Hayden knowingly or intentionally broke and entered the dwelling of another person. See I.C. § 35-43-2-1.5.

Here, Hayden contends that Ronald's house, though purpose-built as a residence, did not satisfy the requirements for a dwelling. Indiana's criminal statutes define a dwelling as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." I.C. § 35-31.5-2-107.

Indiana courts have held

> burglary, like arson, to be an offense against the habitation. Ferrell v. State, 565 N.E.2d 1070, 1072 (Ind. 1991). This is reflected in the burglary statute itself, which provides for greater penalties the closer the offense comes to endangering another's life or well-being. I.C. § 35–43–2–1. In determining what constitutes a dwelling, Watt v. State, 446 N.E.2d 644, 645 (Ind. Ct. App. 1983), purports that the Indiana courts have given dwelling its plain and usual meaning. "The operative word defining 'dwelling' is a 'home'—a settled residence house for a family and their personal possessions." Id. In Smart v. State, 244 Ind. 69, 190 N.E.2d 650 (1963), our supreme court made a distinction between a dwelling, which is a home, and a place of human habitation, which is a place used for purposes other than a home, such as a house used for business purposes. Id. at 652–53.

White v. State, 846 N.E.2d 1026, 1031 (Ind. Ct. App. 2006).

"The term 'dwelling' has been legislatively enlarged to afford protection to interests in the sanctity and security of habitation which, once established, do not necessarily fail because

5

of the lack of use for purposes of sleep, or because the occupant of the premises is not home at the time of the burglary." Brown v. State, 580 N.E.2d 329, 330 (Ind. Ct. App. 1991). A structure may be a dwelling when the occupants are moving out of the house but "still retain access … the utilities [are] still functioning, and … they [have] not yet removed all of their personal belongings or food" such that "they intended to return to the premises and exercise dominion over it." Id. Further, an occupant's long-term residence in a location, after which the individual is hospitalized or otherwise absent from the home does not "'vitiate the character of the premises.'" Watt v. State, 446 N.E.2d 644, 645 (Ind. Ct. App. 1983) (quoting Middleton v. State, 391 N.E.2d 657, 661 (Ind. Ct. App. 1979)).

Here, Ronald and Paul both testified that Ronald had not lived in the house for approximately one year before Hayden's offense. Ronald testified that he had lived in the home since he was thirteen years old, with the exception of a few years of military service. Ronald further testified that the house was first purchased by his family in 1947, remained in the family, and that he held a life estate in the property after his brother's death. All of Ronald's personal possessions remained in the home. Electrical service remained in place. Mail continued to be delivered to Ronald's home, and a friend would bring mail to Ronald at the nursing home in which he was living. And while Ronald acknowledged during trial that it was unlikely that he would return to the house, Paul, who took care of the exterior of the home, testified that during visits Ronald would talk about leaving the nursing home and returning home.

We conclude that this was sufficient evidence from which the jury could reasonably infer that the house was a "home—a settled residence house for a family and their personal possessions." White, 846 N.E.2d at 1031 (citations and quotation marks omitted).

## Jury Instruction

We turn next to Hayden's second issue on appeal, whether the trial court erred when it rejected his proffered jury instruction defining the statutory term, "dwelling."

We afford trial courts broad discretion in the manner of instructing a jury, and we review such decisions only for an abuse of that discretion. Snell v. State, 866 N.E.2d 392, 395 (Ind. Ct. App. 2007). When reviewing jury instructions on appeal, we look to (1) whether the tendered instructions correctly state the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the proffered instruction is covered by other instructions. Treadway v. State, 924 N.E.2d 621, 636 (Ind. 2010). We will reverse a conviction only where the appellant demonstrates that an error in the jury instructions prejudiced his substantial rights. Id. "'[W]here a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise,'" we will not reverse the conviction. Johnson v. State, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011) (quoting Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008)), trans. denied. "The purpose of jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (citations and quotation marks omitted).

Here, the trial court issued an instruction that defined the term "dwelling" by quoting verbatim statutory language in Section 35-31.5-2-107, which defines a dwelling as "a building, structure, or other enclosed space, permanent or temporary, movable or fixed, that is a person's home or place of lodging." Hayden proffered additional language to be appended to the end of the instruction: "but a house, although furnished as a dwelling house, loses its character as such for the purposes of burglary if the occupant leaves it without the intention to return." (Tr. at 563.) The source of the instruction Hayden proffered is Carrier v. State, 227 Ind. 726, 89 N.E.2d 74 (Ind. 1949). Though we agree with Hayden that the statement from Carrier is not, presently, incorrect, that does not settle the question in his appeal.

First, we cannot conclude that there is evidence in the record to support Hayden's request for the instruction. The proffered jury instruction focuses on the intent of the occupant in departing from the home: "a dwelling house…loses its character as such for the purposes of burglary if the occupant leaves it without the intention to return." (Tr. at 563.) There is no evidence in the record that supports a conclusion that Ronald intended never to return home when he left for medical treatment. And though in his trial testimony Ronald expressed his understanding that he would likely never return to his house, testimony from his nephew, Paul, indicates that Ronald had previously expected to return home.

We accordingly find no abuse of discretion in the trial court's decision not to instruct the jury using Hayden's proffered instruction.

## Hearsay

We turn now to Hayden's third issue on appeal, whether the trial court abused its discretion when it excluded certain testimony from evidence as inadmissible hearsay. The admission and exclusion of evidence falls within the sound discretion of our trial courts, and we review such decisions only for abuse of discretion. Bradford v. State, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012). An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. Even when a trial court's evidentiary ruling is in error, we will not reverse unless the error prejudiced the defendant's substantial rights; we will not reverse for harmless error. Ind. Trial Rule 61.

Generally, relevant evidence—that which "has any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action"—is admissible unless excluded by an exception within the rules of evidence. Ind. Evidence Rules 401 & 402. Among the exceptions under which relevant evidence may be ruled inadmissible is when it is hearsay, Evid. R. 802, that is, a statement "not made by the declarant while testifying at the trial or hearing" that "is offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c).

Here, Hayden contends that the trial court abused its discretion when it ruled as inadmissible hearsay certain testimony he offered in support of his contention that he was under the mistaken impression that he was permitted to be at Ronald's home.[1] Specifically, Hayden argues that he was wrongfully precluded from testifying and from eliciting testimony

---

[1] The State contends the matter is waived. Hayden made several offers of proof, and the nature of the evidence he sought to admit is clear. Accordingly, we do not conclude that Hayden's arguments here have been waived.

9

from a witness, Katie Stone ("Stone"), to the effect that he was mistaken in his belief that he was permitted to be on Ronald's property and in Ronald's home for the purpose of completing a transaction to purchase a car.

At trial, Hayden attempted to elicit the following testimony from Stone:

Q:    Did you know you didn't have permission to be in that house?

A:    No. I didn't know that, I thought we had permission. I thought we had permission to be there.

Q:    And why did you think you had permission to be there?

A:    Corrie and J.R. told us we had permission to be there.

(Tr. at 469.)

Upon the State's objection, the trial court struck as inadmissible Stone's statement that "Corrie and J.R. told us we had permission to be there." (Tr. at 469-70.) After the trial court struck Stone's statement, Hayden again asked Stone:

Q:    But it is true that you thought you were authorized to be there? Correct?

A:    Yes.

(Tr. at 470.)

Hayden also tried to testify concerning his interactions with J.R. and Corrie. The trial court similarly disallowed this testimony, permitting only testimony that Hayden had agreed to drive J.R. and Corrie to Ronald's home upon J.R.'s request. Later on, Hayden testified:

Q:    Jeffrey, what did you believe was going to happen when you got down to that house?

A:    We want to buy a car.

10

Q:    Who was going to buy a car?

A:    I took them, J.R. and Corrie, to buy a car.

(Tr. at 552.)

Hayden contends that the testimony he sought to admit—that J.R. and Corrie told Hayden that they had permission to be in Ronald's home for the purpose of completing the purchase of a car—was not hearsay because 1) he sought to introduce it for a non-hearsay purpose, that is, to explain his presence at Ronald's home; and 2) the statements were admittedly untrue, and therefore not introduced to prove the truth of the matter asserted.

Without reaching the merits of Hayden's contention as to the hearsay status of these statements, Hayden has failed to establish how he was prejudiced by any purportedly erroneous exclusion of evidence. Both Hayden and Stone testified that they believed they had permission to be at and in Ronald's home, and that they were present as a result of J.R.'s and Corrie's request for a ride. Additional evidence to that effect would have been cumulative, and thus any error on the trial court's part was harmless.

In addition, there was additional evidence of Hayden's guilt in the form of testimony from Stone concerning in-prison correspondence between her and Hayden. In her testimony, Stone admitted having written to Hayden, "look baby, never been in trouble at all so I'll take the rap for it but I just don't know how to go about it," (Tr. at 492) and "if I never would have grabbed them coats, you would never went…up to that f---ing house. This is all my fault. I'm sorry." (Tr. at 473.)

11

Hayden has failed to establish that he was prejudiced by the trial court's hearsay rulings. We accordingly decline to reverse the judgment on that basis.

## Charging Information

We turn to Hayden's last argument, which contends that the charging information was unconstitutionally vague so that he was not adequately informed of the charges against him and consequently was unable to prepare a defense.

Indiana Code section 35-34-1-2 sets forth the requirements for a charging information. "The purpose of the charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." Ben-Yisrayl v. State, 738 N.E.2d 253, 271 (Ind. 2000).

> For this reason, Indiana Code section 35–34–1–2(a)(4) requires that an indictment or information "allege the commission of an offense by...setting forth the nature and elements of the offense charged in plain and concise language without unnecessary repetition." Ind. Code § 35–34–1–2(a)(4). The indictment or information also must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Ind. Code § 35–34–1–2(d). "The court may, upon motion of the defendant, dismiss the indictment or information ... [if it] does not state the offense with sufficient certainty." Ind. Code § 35–34–1–4(a)(4).

Lebo v. State, 977 N.E.2d 1031, 1038 (Ind. Ct. App. 2012).

> Consistency between the allegations charged and the proof adduced is required out of deference for the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable her to prepare her defense, to protect her in the event of double jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment.

Myers v. State, 510 N.E.2d 1360, 1367 (Ind. 1987).

12

A motion to dismiss the charging information must be made before the omnibus date and no later than twenty days after the defendant is charged with a felony. I.C. § 35-34-1-4(b)(1). Where a defendant has failed to timely seek dismissal of the charges, the defendant must demonstrate fundamental error in order to obtain relief on appeal. Leggs v. State, 966 N.E.2d 204, 207-08 (Ind. Ct. App. 2012).

Hayden contends that the charging information's allegation that he took "property," without specifying what property was alleged to have been taken, "places him in jeopardy should he be tried again for theft of property because this Court cannot determine, from the information, what property was the subject of theft." (Appellant's Br. at 19.) That is, "[h]e stole something, but know not what [sic]." (Appellant's Br. at 19.) He argues as a result that the information is inadequate as to both Burglary and Theft.

The State argues that Hayden waived his challenge to the charging information by failing to timely move to dismiss the charges. We agree; Hayden must therefore demonstrate fundamental error to obtain relief. Fundamental error is error "so prejudicial to the rights [of the accused] that he could not have received a fair trial." Dickenson v. State, 835 N.E.2d 542, 549 (Ind. Ct. App. 2005), trans. denied.

As set forth in the charging information, the State alleged as to Burglary that "on or about October 9, 2013 in Morgan County, State of Indiana, Jeffrey Z. Hayden did break and enter the dwelling of Ronald Pritchard … with the intent to commit a felony." (App'x at 32.) As to Theft, the State alleged that "on or about October 9, 2013 in Morgan County, State of Indiana, Jeffrey Z. Hayden did knowingly exert unauthorized control over the property of

13

Ronald Pritchard … with the intent to deprive said person of any part of the use or value of the property." (App'x at 32.)

Hayden directs us to Griffin v. State, 439 N.E.2d 160 (Ind. 1982), for the proposition that where theft is charged, the property stolen must be named in the charging information in order for a defendant to have adequate notice of the charges against him. In Griffin, the defendant was convicted of several counts of theft, and one count of receiving stolen property. Id. at 160-61. As to receiving stolen property, the charging information alleged only that Griffin "did knowingly receive the property of another person that had been the subject of theft." Id. at 161. Our supreme court held that this information was inadequate to allow Griffin to prepare a defense because "[t]here was no description of the property at all or any indication as to the identities of the rightful owners." Id. at 162. The Griffin Court concluded that the charging information

> was totally inadequate in informing him about what he should defend against and his conviction also places him in jeopardy should he be tried again for these crimes because this Court cannot determine, from the information, what was the property that defendant received as stolen goods.

Id. The court thus vacated Griffin's conviction for receiving stolen property. Id.

Here, unlike in Griffin, the State charged Hayden with theft of Ronald's property and with burglary of Ronald's residence, stating specifically both the name of Hayden's alleged victim and the location where the offenses were alleged to have occurred. Hayden filed a written motion for a directed verdict that he argues on appeal shows that he could not adequately defend the case or avoid later jeopardy. Yet, this motion challenged the sufficiency of the evidence and not the charging information: "Count 2 did not specify what

14

property Mr. Hayden took from the residence. The testimony at trial looked at in a light most favorable to the state [sic] is that Ross Pierson saw him with two cardboard boxes of clothes." (App'x at 98.) Stone discussed clothing as being the reason she and Hayden were arrested in one of the letters she sent to Hayden while they were in jail awaiting trial; the letters were used as impeachment, which would not have resulted had Hayden not called Stone as a witness in his case. (Tr. at 473.)

In these circumstances, we cannot conclude that the lack of specificity in the charging information prejudiced Hayden's ability to defend his case to such a degree that he was unable to receive a fair trial. Hayden has accordingly failed to demonstrate fundamental error on this point, and we decline to reverse his conviction.

<u>Judgment and Sentencing Order and Double Jeopardy</u>

Finally, we turn <u>sua sponte</u> to the trial court's entry of judgment and sentencing order.

During the sentencing hearing, the trial court entered judgment against Hayden for Burglary with an enhanced sentence due to his status as a habitual offender. As to the guilty findings for Theft and Residential Entry, however, the trial court stated during sentencing: "Counts 2 and 3. You were found guilty of them. I'm going to do nothing on those because they essentially just fell under the offense that you are doing here." (Tr. at 683.) Further, the written sentencing order includes a handwritten check-box accompanied by the text, "no sentences shall be entered for Counts 2 + 3." (App'x at 156.) We are thus unable to determine whether the trial court concluded that entry of judgment on Counts 2 and 3 was

15

barred by double jeopardy principles, should have been merged, or whether the court simply declined to enter judgment.

First, as to the guilty findings for Burglary and Residential Entry, we note that Residential Entry is an inherently lesser included offense of Burglary, Webster v. State, 708 N.E.2d 610, 616 (Ind. Ct. App. 1999), trans. denied, and the guilty verdicts for the two offenses in Hayden's case relied upon the same evidence. This contravenes double jeopardy principles, and double jeopardy violations implicate fundamental rights which we may review sua sponte. See Smith v. State, 881 N.E.2d 1040, 1047-48 (Ind. Ct. App. 2008). We accordingly reverse and remand this matter to the trial court with instructions to vacate the jury's guilty verdict as to Residential Entry.

Burglary and Theft, however, do not constitute the same offense under the actual elements test. Payne v. State, 777 N.E.2d 63, 68 (Ind. Ct. App. 2002). Further, there is ample independent evidence of Theft—including jewelry scattered on the road and clothing items Hayden was observed to have removed from the home and placed into his car—to establish that there was no reasonable possibility that the jury used the same evidentiary facts to convict Hayden of both Burglary and Theft. Cf. id. Thus, Hayden's convictions for both are not barred under double jeopardy principles. Therefore, as to the charge of Theft, we remand with instructions to the trial court to determine whether to enter judgment and sentence, or to vacate the jury's guilty verdict.

## Conclusion

There was sufficient evidence that Ronald's house was a dwelling to support Hayden's conviction for Burglary. The trial court did not abuse its discretion when it declined Hayden's proffered jury instruction. Any errors in the trial court's hearsay rulings on Hayden's proffered testimony were, at most, harmless. The charging information was not so vague as to deprive Hayden of his right to a fair trial. We remand the case to the trial court with instructions to clarify the entry of judgment and to vacate the guilty verdict on Residential Entry.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and PYLE, J., concur.