## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 13 2017, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Petersen
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Phillip David Lee Witte,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 13, 2017<br><br>Court of Appeals Case No.<br>20A03-1701-CR-162<br><br>Appeal from the Elkhart Superior Court<br><br>The Honorable Evan Roberts, Judge<br><br>Trial Court Cause No.<br>20D01-1601-F3-3 |

**Altice, Judge.**

### Case Summary

[1] Following a bench trial, Phillip David Lee Witte was convicted of Level 3 felony criminal confinement, Level 6 felony intimidation, and Class B misdemeanor false informing. On appeal, Witte challenges the admission of evidence on hearsay grounds and argues that the State was improperly permitted to ask leading questions of the victim.

[2] We affirm.

## Facts & Procedural History

[3] On the night of October 11, 2015, Kevin Tenner was "strung out" on drugs and began to accuse his girlfriend, Heather Morales, of being a police informant. Tenner believed the police were following them as they walked home. *Transcript Vol. 2* at 43. When they arrived back at Tenner's residence, where he lived with Witte, Tenner continued to call Morales a snitch and made her remove her shirt and pants to prove that she was not wired.

[4] Witte and his girlfriend were also at the residence. Witte's girlfriend went upstairs, while Witte stayed with Tenner and Morales. Tenner threw things at Morales, including a chain that cut her leg. Tenner and Witte eventually forced Morales into a wooden chair, and Witte put tape around her ankles and taped them to the chair. The tape ran out, so Morales's arms remained free. While Witte was binding her legs, Tenner went to the neighborhood 7-Eleven and left Witte to guard Morales.

[5] Upon Tenner's return, he continued to call Morales a snitch. He then started hitting her with a broom stick all over her body. Tenner also kicked her in the ribs, legs, arms, and head after she fell over in the chair. At some point, Witte and Tenner picked Morales up in the chair and moved her to another location in the house, where the beating continued. Thereafter, Morales was thrown to the ground in the chair, and she hit her head.

[6] During the assault, Morales overheard Witte and Tenner talking about killing her. Witte had handed a knife to Tenner near the beginning, but the knife was never used. Before Witte went upstairs to bed, he threatened Morales that he would kill her if she got out of the chair. *Id.* at 158. Tenner stayed downstairs with Morales and eventually fell asleep on the couch. While the men slept, Morales was able to free her feet. She then quickly put on a shirt and ran from the home to the 7-Eleven for help. It was daylight when Morales finally escaped.

[7] Officer Carlton Conway of the Elkhart City Police Department spoke briefly with Morales at the hospital that day and then went to the reported location of the attack. A man answered the door, and Officer Conway explained the reason for his visit. The man identified himself as Steven Thompson, but he was, in fact, Witte. Tenner was present and also gave a false name to the officer. While Officer Conway waited to speak with the homeowner, who was not yet on the scene, the men present were permitted to leave.

On February 1, 2016, the State charged Witte with five counts: Count I, Level 3 felony criminal confinement; Count II, Level 5 felony battery resulting in serious bodily injury; Count III, Level 5 felony criminal confinement; Count IV, Level 6 felony intimidation; and Count V, Class B misdemeanor false informing. Witte waived his right to a jury trial, and the cause was tried before the bench on October 11 and 12, 2016. The trial court found him guilty as charged and, thereafter, entered judgments of conviction on Counts I, IV, and V. Witte received an aggregate sentence of nineteen years, with fourteen years executed and five years suspended to probation. He now appeals.

### Discussion & Decision

Before reaching the merits, we are compelled to address the inadequacy of Witte's counsel's briefing. We note only the most glaring deficiencies, though there are more. The brief wholly omits two required sections – the Statement of Case and the Summary of Argument. *See* Ind. Appellate Rule 46(A)(5) and (7). And the Statement of Facts section contains no facts relevant to the issues presented, as required by App. R. 46(A)(6). In this section, counsel only favors us with a list of the charges filed against Witte and then an inaccurate statement that Witte was found guilty of just the first three counts. Finally, the two-page Argument section is woefully lacking.

An appellant's brief must be prepared so that this court, considering the brief alone and independently from the record, can intelligently consider each issue presented. *See Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d

486, 488 (Ind. Ct. App. 2003). Witte's counsel has not done so here and, as a result of his flagrant violations of our appellate rules, has risked the dismissal of his client's appeal. *See Galvan v. State*, 877 N.E.2d 213 (Ind. Ct. App. 2007). We exercise our discretion, however, and reach the merits – to the extent possible – of the issues presented. Before filing another appellate brief, we direct counsel to thoroughly review Indiana's Rules of Appellate Procedure, as continued violations could result in disciplinary action. *See In re Clifton*, 961 N.E.2d 18 (Ind. 2011).

[11] On appeal, Witte argues that the trial court abused its discretion in two regards. He claims that hearsay evidence was improperly admitted during Morales's testimony and that the State was permitted to ask leading questions of Morales. We will address each in turn.

[12] With respect to the hearsay issue, Witte directs us to four pages of the transcript without quoting any particular part. He then generally complains that Morales was permitted to testify that Tenner threatened to kill her on the night in question. The State contends that this issue was not preserved below. This point is well-taken. Regardless, admission of the challenged testimony, even if improper, was harmless. *See* Ind. Trial Rule 61 (reversal not warranted where error does not affect the substantial rights of the parties). *See also Hayden v. State*, 19 N.E.3d 831, 840 (Ind. Ct. App. 2014) (appellant must establish prejudice resulting from erroneous hearsay ruling to obtain reversal), *trans. denied*. Witte does not – nor could he in light of Ind. Evidence Rule 801(d)(2)(A) (statement by a party opponent) – challenge Morales's testimony

that Witte himself threatened to kill her. We fail to see how Witte was prejudiced by the admission of evidence that his cohort, who was violently beating Morales, also threatened to kill her.

[13] Finally, Witte contends that the trial court abused its discretion by allowing, over his objection, the State to ask leading questions of Morales on direct examination. Witte directs us to one page of the transcript and does not otherwise indicate the information obtained through the use of leading questions by the State.

[14] While leading questions generally should not be used on direct examination, Ind. Evidence Rule 611(c) permits leading questions when they are "necessary to develop the witness's testimony." "The use of leading questions on direct examination generally rests within the trial court's discretion." *Williams v. State*, 733 N.E.2d 919, 922 (Ind. 2000). The trial court so exercised its discretion during a brief portion of Morales's testimony, and Witte has failed to establish an abuse of that discretion.[1] Moreover, he has not shown that the trial court's action in permitting such questioning, even if erroneous, was anything but harmless. *See id.* at 925 ("we decline to reverse because the trial court's action in permitting these leading questions, even if erroneous, was not

---

[1] Contrary to Witte's apparent assertion on appeal, leading questions on direct examination are not limited to use on hostile witnesses. *See generally id.*

inconsistent with substantial justice and did not affect the substantial rights of the defendant").

[15] Judgment affirmed.

Baker, J. and Bailey, J., concur.