## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 10 2020, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marvin Jose Maldonado, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | November 10, 2020 <br><br> Court of Appeals Case No. 19A-CR-2478 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Stephen R. Bowers, Judge <br><br> Trial Court Cause No. 20D02-1806-F2-27 |

**Altice, Judge.**

**Case Summary**

Following a jury trial, Marvin Maldonado was convicted of Level 2 felony burglary, Level 5 felony criminal confinement, Level 5 felony operating a motor vehicle as a habitual traffic violator (HTV), Level 6 felony resisting law enforcement, Level 6 felony operating a vehicle while intoxicated (OWI), and Level 6 felony residential entry. He was also adjudicated as a habitual offender. The trial court sentenced him to an aggregate sentence of fifty-two and one-half years in the Indiana Department of Correction (DOC). Maldonado raises four issues on appeal, which we restate as follows:

1. Did the State present sufficient evidence to support his burglary conviction?

2. Do his convictions for both burglary and residential entry violate double jeopardy protections?

3. Does the aggregate sentence imposed by the trial court violate the limitations for an episode of criminal conduct set out in Ind. Code § 35-50-1-2(d)?

4. Is Maldonado's aggregate sentence inappropriate in light of the nature of his offenses and his character?

We affirm in part, reverse in part, and remand.

## Facts & Procedural History

Maldonado and Margarita Miller were in a relationship for about ten years and have four minor children together. Sometime in 2016, Miller moved into an apartment with the children at North Lake Apartments in Elkhart. Maldonado

was incarcerated shortly thereafter through early 2018. Upon his release, Maldonado lived about five minutes away from Miller and the children. Miller was in a new relationship with Travion Harris, which Maldonado was not happy about. Although Miller permitted Maldonado to come to the apartment to pick up the children, he was not granted free access to the apartment. Miller changed the locks to the apartment in May 2018 after Maldonado took her keys.

[4] On the afternoon of June 19, 2018, Maldonado entered Miller's unlocked apartment without her permission. Miller was napping in her bedroom with their one-year-old daughter when Miller awakened to find Maldonado standing over her. He said he wanted to talk, and he showed her alcohol that he had brought. Miller told him to leave and that she was with someone else and did not want anything to do with Maldonado anymore. The two began arguing, and Maldonado told Miller, "You're mine. I'm not going anywhere." *Transcript Vol. 3* at 117. Miller walked out of the bedroom and told Y.V., her twelve-year-old babysitter, to gather the kids and prepare to leave. In the meantime, Maldonado threw Miller's mattress over the second-floor balcony. Maldonado eventually ran out of the apartment, as Miller warned that she was going to call the police.

[5] Late that night, Miller left Y.V. in the apartment with the children as she and a friend went to the grocery store. Miller provided Y.V. with a phone to call if anything happened. The deadbolt to the apartment was locked. Two of the

children slept on the living room couch while Y.V. watched television in the dark room, with only a hallway light on.

[6] At some point after midnight, Y.V. heard loud bangs at the front door, which was just down the stairs that were connected to the living room. Maldonado and another man, Jesus Olvera Duran, had kicked in the front door. Maldonado came up the stairs first and angrily asked Y.V. where Miller was before walking to the back bedroom with a fixed-blade knife that Y.V. could see protruding from his pocket. Duran stood at the top of the stairs with a bandana over the lower half of his face and blocked the only exit. Y.V. attempted to retrieve the cellphone from the kitchen island but stopped when Duran warned, "If you move, I'm gonna shoot you." *Id*. at 180. Y.V. then heard something metal clink against the metal baby gate where Duran was standing, which caused Y.V. to believe Duran had a gun. Y.V. was scared.

[7] Maldonado came back into the living room and asked where Trey was, referring to Miller's boyfriend. He then said angrily, "I was gonna put 66 stitches in him." *Id*. at 182. This frightened Y.V. Around this time, four-year-old D.N.M. awoke and Maldonado picked him up off the couch and left the apartment with D.N.M. and Duran.

[8] Y.V. went to lock the front door behind them but was unable to do so because of the severe damage to the door. She watched as the men entered a white vehicle with D.N.M., and then she went back upstairs and called Miller, who in turn immediately called 911.

[9]     In the meantime, shortly before 1:30 a.m., Officer Adrian Zehr with the Elkhart County Sheriff's Department observed a white vehicle being driven with no taillights illuminated. He caught up with the vehicle, which was speeding and had crossed the center line. As Officer Zehr followed, the driver of the vehicle, later identified as Maldonado, turned off the county road and into the North Lake Apartments. Officer Zehr attempted to initiate a stop, but Maldonado continued to drive to the back of the complex and parked near Miller's apartment. Unaware of the earlier incident inside the apartment, Officer Zehr called for backup and then approached the vehicle as Maldonado and Duran switched places inside the vehicle. D.N.M. was unrestrained in the back seat of the vehicle. As Maldonado exited the vehicle upon Officer Zehr's command, a "steak knife" fell to the ground at their feet. *Id*. at 13. Additionally, Officer Zehr observed that Maldonado was intoxicated, and there were open alcohol containers inside the vehicle. Officer Zehr also discovered that Maldonado was an HTV with a lifetime suspension.

[10]    Officer Chad Hoien arrived as backup and detained Duran, as Officer Zehr handled Maldonado. Miller arrived and parked her van near the scene of the stop and ran up to Officer Hoien. She was "frantic and upset" and reported that someone had "kicked in her door." *Id*. at 77. Y.V. came out and spoke to Officer Hoien about what had happened inside the apartment. Miller collected D.N.M., who was crying and shaking in the backseat of the vehicle, and she took him inside her apartment. Both Maldonado and Duran were arrested.

[11]   On June 22, 2018, the State charged Maldonado[1] with Level 2 felony burglary while armed with a deadly weapon (Count I), Level 3 felony criminal confinement while armed with a deadly weapon (Count II), Level 5 felony operating as a HTV (Count III), Level 6 felony resisting law enforcement (Count IV), and Level 6 felony OWI with a minor passenger (Count V). Thereafter, the charges were amended in part and two additional counts were added, Level 6 felony residential entry (Count VI) and Class B misdemeanor criminal mischief (Count VII). These new counts related to the events that occurred on the afternoon of June 19, 2018, while the first five counts addressed the later incidents on June 20, 2018. The State also filed a habitual offender enhancement.

[12]   Following a jury trial in August 2019, Maldonado was found guilty as charged of Count I and Counts III through VI, not guilty of Count VII, and guilty of a lesser included offense of Count II, Level 5 felony criminal confinement of a child under the age of fourteen rather than Level 3 felony criminal confinement while armed with a deadly weapon. He was also found to be a habitual offender.

[13]   At the sentencing hearing on September 23, 2019, the trial court sentenced Maldonado to an aggregate term of fifty-two and one-half years. Specifically, he received sentences of twenty-five years on Count I, four years on Count II,

---

[1] Duran was also charged with a number of criminal offenses and tried with Maldonado.

five years on Count III, two years on Count IV, and two and one-half years each on Counts V and VI. All counts were ordered to be served concurrently except Counts III and V, which were ordered to be served consecutively to Count I and each other. Additionally, the sentence on Count I was enhanced by twenty years based on the habitual offender adjudication. Maldonado now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Sufficiency

[14] Maldonado initially contends that the State presented insufficient evidence to support his burglary conviction. Our standard of review for such a claim is well settled. "Convictions should be affirmed unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *T.H. v. State*, 92 N.E.3d 624, 626 (Ind. 2018). Thus, when reviewing the sufficiency of the evidence on appeal, we must consider only the probative evidence and reasonable inferences supporting the conviction, and we should not assess witness credibility or weigh the evidence. *See Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015).

[15] Level 5 felony burglary is defined as: "A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it[.]" Ind. Code § 35-43-1-2. The offense is elevated to a Level 2 felony if it is committed while armed with a deadly weapon. I.C. § 35-43-1-2(3)(a).

[16] On appeal, Maldonado does not dispute the sufficiency of the evidence regarding his breaking and entering Miller's apartment while armed with a deadly weapon. He argues only that the State failed to establish that he did so with the intent to commit felony battery inside the apartment. He claims that his statement to Y.V. that he was going to put sixty-six stitches in Miller's boyfriend was an "empty threat" and that "such an act would not necessarily constitute battery resulting in serious bodily injury." *Appellant's Brief* at 16.

[17] To establish the intent element for burglary, the State must prove beyond a reasonable doubt the defendant's intent to commit a felony specified in the charge. *Brown v. State*, 64 N.E.3d 1219, 1230 (Ind. Ct. App. 2016), *trans. denied*. The intent to commit a given felony may be inferred from the circumstances, but some fact in evidence must point to an intent to commit a specific felony. *Id*.; *see also Smith v. State*, 671 N.E.2d 910, 912-13 (Ind. Ct. App. 1996) ("The requisite intent to commit a felony typically can be inferred from the subsequent conduct of the individual inside the premises or by the manner in which the crime was committed.").

[18] Here, the State alleged that Maldonado entered Miller's apartment with the intent to commit battery resulting in serious bodily injury while inside. Serious bodily injury elevates a misdemeanor battery offense to a level 5 felony. Ind. Code § 35-42-2-1(g)(1). It includes bodily injury that creates a substantial risk of death or that causes, among other things, unconsciousness, extreme pain, or protracted loss or impairment of the function of a bodily member or organ. Ind. Code § 35-31.5-2-292.

[19] The facts most favorable to the verdict establish that Maldonado had a heated encounter with Miller on the afternoon of June 19, 2018. Miller made it clear to Maldonado that she was not interested in a relationship with him and that she had a new boyfriend. This news did not please Maldonado, and he responded by throwing Miller's mattress over the balcony. He returned to the apartment several hours later, after midnight. While armed with a knife and accompanied by Duran, who attempted to conceal his identity, Maldonado broke down the door to the apartment and came up the dark staircase. He then looked throughout the apartment, while Duran kept Y.V. from leaving or calling for help. Unable to find Miller or her boyfriend inside, Maldonado angrily told Y.V., "I was gonna put 66 stitches in him." *Id.* at 182. The jury could reasonably infer from the circumstances, including Maldonado's own statement, that Maldonado intended to commit battery resulting in serious bodily injury after forcing his way into the apartment in the middle of the night while armed with a knife. Thus, sufficient evidence supports his conviction for burglary as a Level 2 felony.

## 2. Double Jeopardy

[20] Maldonado claims that his separate convictions for burglary and residential entry violate principles of double jeopardy. Residential entry is indeed an inherently lesser included offense of burglary and, thus, convictions for both cannot stand *if based on the same evidence*. *See Hayden v. State*, 19 N.E.3d 831, 842 (Ind. Ct. App. 2014), *trans. denied*. In this case, however, Maldonado was charged with and convicted of two entirely separate incidents – residential entry

on the afternoon of June 19, 2018, and burglary after midnight on June 20, 2019. Under the circumstances, his double jeopardy claim must fail.

### 3. Consecutive Sentences

[21] Next, Maldonado argues that the consecutive nature of his sentences resulted in an aggregate sentence in excess of that allowed by I.C. § 35-50-1-2(d). While his analysis is faulty, he is ultimately correct that the trial court exceeded its statutory authority in sentencing him.

[22] I.C. § 35-50-1-2 "limits a court's authority in imposing consecutive sentences if the convictions are not for 'crimes of violence' and the convictions 'arise out of an episode of criminal conduct.'" *Fight v. State*, 768 N.E.2d 881, 881-82 (Ind. 2002). The statute provides in relevant part:

> (c) Except as provided in subsection (e) or (f) the court shall determine whether terms of imprisonment shall be served concurrently or consecutively…. However, except for crimes of violence, the total of the consecutive terms of imprisonment [exclusive of habitual offender enhancements] to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the period described in subsection (d).

> (d) Except as provided in subsection (c), the total of the consecutive terms of imprisonment to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct may not exceed the following:

> ****

(2) If the most serious crime for which the defendant is sentenced is a Level 5 felony, the total of the consecutive terms of imprisonment may not exceed seven (7) years.

****

(5) If the most serious crime for which the defendant is sentenced is a Level 2 felony, the total of the consecutive terms of imprisonment may not exceed thirty-two (32) years.

****

I.C. § 35-50-1-2.

[23] Three of Maldonado's sentences were ordered to be served consecutively – the sentences for burglary, HTV, and OWI – resulting in an aggregate sentence, exclusive of the habitual offender enhancement, of thirty-two and one-half years. On appeal, Maldonado argues that these offenses constituted an episode of criminal conduct[2] and that the OWI offense was not a crime of violence and therefore, his aggregate sentence could not exceed thirty-two years under I.C. § 35-50-1-2(d)(5). The State responds by arguing that the OWI offense was entirely separate from the criminal conduct that occurred inside the apartment after his forced entry and was not part of a single episode of criminal conduct.

---

[2] An "episode of criminal conduct" is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b).

[24]     Both parties overlook the fact that burglary as a Level 2 felony is statutorily defined as a crime of violence. I.C. § 35-50-1-2(a)(15). Thus, it is immaterial whether the burglary and the OWI constituted an episode of criminal conduct because, regardless, the statutory limitation would not apply between these offenses. *See Ellis v. State*, 736 N.E.2d 731, 737 (Ind. 2000) ("interpret[ing] the statute to exempt from the sentencing limitation (1) consecutive sentencing among crimes of violence, and (2) consecutive sentencing between a crime of violence and those that are not crimes of violence").

[25]     The limitation, however, does apply "between and among those crimes that are not crimes of violence." *Id*. The OWI and HTV offenses are not crimes of violence, and they were clearly part of an episode of criminal conduct. *See Puckett v. State*, 843 N.E.2d 959, 964 (Ind. Ct. App. 2006) (applying limitation to consecutive sentences for OWI and HTV offenses and concluding that the sentence imposed by the trial court was "facially defective and in violation of express statutory authority"). The trial court sentenced Maldonado to a total of seven and one-half years for these two offenses, the most serious of which was a Level 5 felony. This was contrary to I.C. § 35-50-1-2(d)(2), which limits the aggregate sentence for these offenses to seven years. Accordingly, we vacate the sentence order and remand for resentencing in accordance with the applicable statutory limits.

## 4. Inappropriate Sentence

[26] Finally, Maldonado contends that the aggregate sentence imposed by the trial court is inappropriate. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[27] The trial court imposed an aggregate sentence of fifty-two and one-half years for Maldonado's convictions for one Level 2 felony enhanced for being a habitual offender, two Level 5 felonies, and three Level 6 felonies. For the burglary conviction alone with the habitual offender enhancement, he faced a sentence

of between sixteen and fifty years. *See* I.C. § 35-50-2-4.5 (sentencing range for a Level 2 felony is between ten and thirty years, with the advisory sentence being seventeen and one-half years.); I.C. § 35-50-2-8(i)(1) (enhancement for being a habitual offender is between six and twenty years for a person convicted of a Level 2 felony). The trial court imposed forty-five years. Additionally, the sentencing range for his Level 5 felonies was between one and six years, with an advisory sentence of three years, and for his Level 6 felonies the range was between six months and two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-6(b); I.C. § 35-50-2-7(b). The trial court imposed a total sentence of seven and one-half years for these five additional offenses. In sum, although Maldonado received enhanced and partially consecutive sentences, the aggregate sentence imposed by the trial court was substantially below the maximum permitted under the sentencing statutes.

[28] Regarding the nature of his offenses, Maldonado seems to suggest that he was permitted to be in the apartment on the night of the burglary and was simply exercising visitation with his children. This assertion flies in the face of the evidence presented at trial, which establishes that Maldonado, with an accomplice, violently kicked down the door of Miller's apartment in the middle of the night, armed with a knife. While Duran guarded the only exit and threatened the twelve-year-old babysitter with being shot, Maldonado searched the apartment for Miller and her boyfriend. He eventually determined that they were not present and then angrily told the already frightened J.V. that he "was gonna put 66 stitches in [Miller's boyfriend]." *Transcript Vol. 3* at 182. The fact

that Maldonado did not commit any physical acts of violence inside the apartment that night appears to be based only on the fortuitous occurrence of Miller and/or her boyfriend not being present, not any restraint by Maldonado.

[29] Further, when four-year-old D.N.M. awoke during the commotion occurring right in front of him, Maldonado picked him up and then left. Maldonado, who was under the influence of alcohol and otherwise not permitted to be driving due to being a HTV, drove away with D.N.M. With the child unrestrained in the back of the vehicle, Maldonado drove at a high rate of speed, crossed the center line of the roadway, and did not immediately stop when Officer Zehr attempted to initiate a traffic stop. Additionally, we observe that the residential entry that occurred only hours before was also committed in the presence of the children. We do not find that the nature of the offenses warrants a lesser sentence.

[30] Turning to Maldonado's character, we find most notable his extensive and consistent criminal behavior. In addition to a significant juvenile history, Maldonado has accumulated at least five felony convictions and nine misdemeanor convictions since becoming an adult in 2005, and he has violated probation and/or community corrections at nearly every turn. He began with misdemeanor driving and substance offenses and then escalated to multiple felony driving offenses (2007, 2009, 2011, and 2016), domestic battery (2008), false informing (2011), failure to return to lawful detention (2012), and battery resulting in bodily injury (2015).

[31]  Maldonado displayed his utter disregard for the law while serving his six-year sentence for his 2011 felony driving offense. He violated community corrections rules and probation on multiple occasions, committed new crimes in 2012, 2015, and 2016, and was eventually sent to prison to complete his sentence. Shortly after being released from prison in March 2018, and while on probation for the 2016 HTV offense, Maldonado committed the instant offenses.

[32]  After addressing Maldonado's criminal history in detail, the trial court aptly observed:

> [Y]our behavior in the past suggests that you're not going to follow the law and you're not going to follow the orders of this court….
>
> With respect to the mitigating circumstances, I was concerned [] when I heard that you had a difficult childhood, but given your age and given the number of opportunities you've had while engaged with the system to address the problems over the course of your childhood, I give that minimal weight.
>
> The fact that this is your first conviction for a violent felony [] rings hollow to me. The fact is it was another violent act. You have demonstrated yourself to be a person who will resort to violence. That may be connected to the abuse of alcohol in this situation, but certainly the expressed intention … was that you went to this residence with the intention of entering and committing a very violent act in cutting somebody.

*Transcript Vol. 4* at 67.

[33] In addition to attempting to downplay his criminal history on appeal, Maldonado notes that he has five minor children, obtained his GED, and completed several programs while in jail pending trial on these charges. Maldonado does not explain how his fathering five children speaks well of his character, especially when he is in significant arrears for payment of child support and has spent the bulk of their childhood incarcerated. We also note that Maldonado committed the instant crimes in the presence of some of his children and put his four-year-old son in imminent danger. Further, the record shows that he obtained his GED in 2005, yet still continued his criminal behavior. Like the trial court, we commend Maldonado for making productive use of his time while in jail, but this does not overshadow his extensive history of criminal behavior.

[34] We cannot say that the aggregate sentence imposed by the trial court is inappropriate in light of Maldonado's character, particularly as represented by his criminal history, and the nature of his offenses. As set forth above, however, we remand for resentencing in accordance with I.C. § 35-50-1-2.

[35] Judgment affirmed in part, reversed in part, and remanded for resentencing.

Riley, J. and May, J., concur.